In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-4208

BOBBY HARDRICK,

*Plaintiff-Appellant*,

*v.*

CITY OF BOLINGBROOK, and
BOLINGBROOK POLICE OFFICERS
LIMACHER, SALERNO, et al.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 1334—**James F. Holderman**, *Chief Judge.*

———————

ARGUED OCTOBER 24, 2007—DECIDED APRIL 10, 2008

———————

Before FLAUM, MANION, and WILLIAMS, *Circuit Judges.*

MANION, *Circuit Judge.* Bobby Hardrick ("Hardrick") filed a one-count complaint against Officers Limacher, Salerno, Riend, and Liazuk pursuant to 42 U.S.C. § 1983 alleging unlawful arrest and unreasonable force in arrest in violation of his rights under the Fourth and Fourteenth Amendments and against the city of Bolingbrook, Illinois pursuant to a state indemnification statute, 745 ILCS 10/9-102. The district court granted summary judgment in favor of the defendants. We reverse and remand.

I.

Because our review is based on a grant of defendants' motion for summary judgment, we take the facts in the light most favorable to Hardrick. *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 635 (7th Cir. 2007). On March 14, 2005, Bolingbrook, Illinois police officers Limacher, Salerno, Riend, and Liazuk responded to a dispatch. The call reported a domestic dispute in a grocery store parking lot involving a black man wearing a black jacket choking a black woman wearing a red jacket. Upon arriving at the scene, Liazuk observed a man and woman who met the description, and Liazuk asked them to come over and speak with him. The man was Robert ("Bobby") Hardrick. The woman came over to Liazuk, but Hardrick continued to walk away. The woman stated that she and Hardrick had a verbal argument. Liazuk radioed his colleagues, and Limacher spotted Hardrick and stopped him, directing him to place his hands on Limacher's car. Hardrick complied, and Limacher patted him down for weapons and did not find any. Hardrick then told the officers that the altercation with the woman had only been verbal and not physical.

Limacher asked Hardrick for his name, to which Hardrick responded "Robert Carter." Limacher ran the name "Robert Carter" through dispatch. When nothing came back on the name, Limacher asked Hardrick if he had ever had an Illinois driver's license or had been arrested in Illinois. Hardrick responded in the negative to both questions. At that point, Limacher went to speak with the female while Liazuk spoke with Hardrick. The woman told Limacher that she did have an argument with Hardrick that was verbal and not physical. The woman also said that while she and Hardrick were

friends she was not sure what his name was and thought his last name may be Hancock. Limacher next ran the name of "Robert Hancock" through dispatch and again received no record on file for that name.

Limacher returned to Hardrick and began to once again ask him for his name and if he had any identification from any other state. Hardrick first stated that in the past he had identification from Missouri. After a fruitless search of Missouri records, Hardrick told Limacher that it was possible that he had identification from Georgia. The Georgia search was similarly unproductive. In addition to his responses about his name, Hardrick told Limacher that he was thirty-two years old and that his date of birth was May 24, 1974, which would have made him thirty-one on the date in question. The total time of the exchanges from the initial stop was seven minutes.

Limacher, then, began to search Hardrick for identification. At this point, Hardrick ran away. Liazuk apprehended Hardrick and a struggle ensued. In answers to interrogatories, Hardrick contends that he was "peaceably waiting to be handcuffed" and that the officers beat him, breaking his wrist in two places.

Hardrick was charged in a criminal complaint in an Illinois state court with battery and resisting a peace officer. Hardrick moved to quash his arrest, and the state court held a hearing. Before the state court ruled on his motion to quash, Hardrick pleaded guilty to the charge of resisting a peace officer and the battery charge was not prosecuted. The resisting a peace officer charge read:

> ROBERT L. HARDRICK, a male person, committed the offense of: RESISTING A PEACE OFFICER (Class A Misdemeanor) in that, said defendant knowingly resisted the performance of Eli Limacher, of an autho-

rized act within his official capacity, being the arrest of Robert Hardrick, knowing Eli Limacher to be a peace officer engaged in the execution of his official duties, in that he fled from Eli Limacher and struggled while being handcuffed, in violation of Chapter 720, Section 5/31-1, of the Illinois Compiled Statutes, 2005.

On March 10, 2006, Hardrick filed a one-count complaint in federal district court against Limacher, Salerno, Riend, and Liazuk alleging unlawful arrest and unreasonable force in arrest in violation of his rights under the Fourth and Fourteenth Amendments based on the officers' conduct during the March 14, 2005 incident. He also sued the city of Bolingbrook under an Illinois indemnification statute, 745 ILCS 10/9-102. Hardrick asserted that the officers used excessive and unreasonable force in the course of an unlawful arrest. Specifically, Hardrick alleged: "5. Defendants Limacher, Salerno, Riend, and Liazuk unlawfully arrested plaintiff on March 14, 2005. 6. In the course of making the above referenced arrest, one or more of defendants Limacher, Salerno, Riend, and Liazuk used excessive force and unreasonable force, causing plaintiff to sustain personal injuries."

Three months after filing their answer, the defendants filed a motion for summary judgment arguing that Hardrick's claim for unlawful arrest was barred by his conviction for resisting a peace officer. The defendants reasoned that the conviction established probable cause for the arrest, thereby making it lawful. Citing *Heck v. Humphry*, 512 U.S. 477 (1994), the defendants further argued that his claim for excessive force was also barred by his criminal conviction. Hardrick responded by arguing that the existence of probable cause for his arrest for resisting a peace officer did not preclude a claim that he was unreasonably deprived of his freedom of move-

ment prior to fleeing Limacher. As to his excessive force claim, Hardrick asserted that his plea for resisting a peace officer would not invalidate his excessive force claim because "defendants used excessive force after they apprehended [him], while he was 'peaceably waiting to be handcuffed.'" In support of his response, Hardrick attached his answers to defendants' interrogatories and a transcript of a hearing before the state court in his criminal case. In reply, defendants asserted that Hardrick's initial questioning took only seven minutes and thus was a valid stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968).

The district court granted the defendants' motion for summary judgment. It concluded that Hardrick's unlawful arrest claim was barred by *Heck* because Hardrick had previously pleaded guilty to resisting a peace officer and, under Illinois law, if there is physical resistance, the police officer has probable cause to arrest an individual. The district court further concluded that the officer's stop of Hardrick prior to his fleeing was a valid *Terry* stop. As for his excessive force claim, the district court also concluded that it was barred by *Heck* as well. In addition, citing *Dillard v. Chicago Transit Authority*, No. 00-C-8028, 2003 WL 22136309 at *2 n.1 (N.D. Ill., Sept. 16, 2003), the district court stated that Hardrick's "own unsworn answers to defendants' interrogatories are inadmissible hearsay evidence that cannot be considered on summary judgment," and thus he presented no admissible evidence that defendants employed excessive force.

Hardrick later filed a motion pursuant to Federal Rule of Civil Procedure 59(e) seeking clarification that his answers to interrogatories were on par with a sworn declaration. The district court denied Hardrick's motion, noting that a party's own answers to interrogatories

propounded by the other party are inadmissable. Hardrick now appeals the district court's refusal to consider his interrogatory answers and the district court's grant of summary judgment in favor of the defendants on his unlawful arrest and excessive force claims.

## II.

We review the district court's grant of summary judgment de novo, taking the evidence in the light most favorable to Hardrick, the non-moving party. *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 635 (7th Cir. 2007). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Evidence submitted on summary judgment "need not be admissible in form (for example, affidavits are not normally admissible at trial), but it must be admissible in content." *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002).

On appeal, Hardrick challenges the district court's conclusion that his answers to interrogatories constituted "inadmissible hearsay on summary judgment." The district court cited *Dillard v. Chicago Transit Authority*, No. 00-C-8028, 2003 WL 22136309 at *2 n.1 (N.D. Ill Sept. 16, 2003), in support of this conclusion. The interrogatory answers rejected by the district court in *Dillard* were "not based on personal knowledge and [were] hearsay." *Id.* Here, however, Hardrick provided information of what transpired based on his own recollection to which he would be able to testify at trial. Further, Hardrick's an-

swers did not contain any statements. That information does not constitute hearsay. Pursuant to Rule 56(c), a district court may consider answers to interrogatories when reviewing a motion for summary judgment so long as the content of those interrogatories would be admissible at trial. Thus, the district court erred in characterizing Hardrick's answers as inadmissible hearsay evidence that cannot be considered on summary judgment. Therefore, we will consider Hardrick's interrogatory answers as we review the district court's grant of the defendants' motion for summary judgment on Hardrick's unlawful arrest and excessive force claims.

As we recently noted, "*Heck v. Humphry*, 512 U.S. 477 (1994), holds that the plaintiff in an action under 42 U.S.C. § 1983 may not pursue a claim for relief that implies the invalidity of a criminal conviction, unless that conviction has been set aside by appeal, collateral review, or pardon." *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008). This rule "is intended to prevent collateral attack on a criminal conviction through the vehicle of a civil suit." *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006) (citing *Heck v. Humphrey*, 512 U.S. 475, 484 (1994)). A person convicted of resisting arrest or assaulting a police officer, however, is not precluded from bringing a § 1983 action "for excessive force stemming from the same confrontation," *id.* (citing *Van Gilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006)), so long as the § 1983 case does not undermine the validity of the criminal conviction.

"To properly apply *Heck*'s bar against certain damage actions, a district court must analyze the relationship between the plaintiff's § 1983 claim and the charge on which he was convicted." *Van Gilder*, 435 F.3d at 691. Here, Hardrick pleaded guilty to resisting or obstructing a peace officer. Under Illinois law, "[a] person who know-

ingly resists or obstructs the performance by one known to the person to be a peace officer or correctional institution employee of any authorized act within his official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1. Resisting even an unlawful arrest of a known police officer violates the statute. *People v. Locken*, 322 N.E. 2d 51, 53-54 (Ill. 1974); *People v. Villareal*, 604 N.E.2d 923, 926-27 (Ill. 1992). The specific facts in the charge to which Hardrick pleaded guilty are that "he fled from Eli Limacher and struggled while being handcuffed . . . ." We compare Hardrick's two claims in this case, unlawful arrest and excessive force, with his criminal charge.

"An unlawful arrest occurs when a person is seized by police without probable cause. Whether a person has been seized is determined by considering whether a reasonable person, innocent of any crime, would have concluded that he was not free to leave police custody." *A.M. v. Butler*, 360 F.3d 787, 798 (7th Cir. 2004) (citing *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)); *see also Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998). However, "under *Terry v. Ohio*, police officers may conduct a brief investigatory stop of a suspect if they have reasonable suspicion based on articulable facts that a crime is about to be or has been committed." *United States v. Amaral-Estrada*, 509 F.3d 820, 827 (7th Cir. 2007) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "Courts examine the reasonableness of a stop based on the totality of the circumstances known to the officer at the time of the stop." *Id.*

On appeal, Hardrick's challenge of the district court's grant of summary judgment on his unlawful arrest claim, particularly its conclusion that the officers' stop constituted a valid *Terry* stop, is two-fold. First, Hardrick contends in a one-sentence argument that "[t]he district

court erred in finding that this search for identification was permissible under *Terry v. Ohio*, 392 U.S. 1 (1968)." Because Hardrick's argument is conclusory, we conclude that this challenge to the search for identification is waived. *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)."); Fed. R. App. P. 28(a)(4).

Hardrick's second part of the argument concerning the stop is that it was improper for the district court to consider defendants' assertion in their reply brief that their detaining him was a *Terry* stop lasting for an undisputed period of seven minutes.[1] There are several reasons why this argument fails. First, the defendants were properly responding in their reply brief to a theory of the case that Hardrick asserted in response to defendants' motion for summary judgment, specifically his contention that "nothing in this conviction [for resisting a peace officer] is

---

[1] Defendants contend that Hardrick waived his right to challenge the district court's action by failing to seek leave to file a sur-reply with the district court to challenge the *Terry* stop argument. Contrary to defendants' suggestion, there is no requirement that a party file a sur-reply to address an argument believed to be improperly addressed, and defendants provide no support for this contention. Should a party be required to seek leave to file a sur-reply in order to preserve an argument for purposes of appeal, arguments before the district court would proceed ad infinitum making litigation unruly and cumbersome.

relevant to whether [he] was lawfully in custody before he ran away." Hardrick also contended in his statement of facts that he "complied with Limacher's orders, which were intended to deprive plaintiff of his freedom of movement." Thus, Hardrick himself put the validity of the stop at issue. Also, the facts upon which the district court relied in concluding that the stop was a lawful *Terry* stop were presented in the state court hearing transcript which Hardrick attached to his response memorandum filed with the district court.

The district court did not err in concluding that the factual scenario presented in this case satisfied the requirements of *Terry*. The officers were responding to a domestic disturbance and were attempting to ascertain who was involved and what happened. Hardrick, as a black male wearing a black jacket and walking away from the grocery store parking lot, fit the description of one of the individuals the dispatcher reported to be involved in the dispute. *See Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, 186 (2004) ("Officers called to investigate domestic disputes need to know whom they are dealing with in order to assess the situation, the threat to their own safety, and possible danger to the potential victim."). Hardrick prolonged the duration of the stop by his inconsistent responses to basic queries about his identity, which Illinois law permits an officer to demand during a temporary stop. *See* 725 ILC 5/107-14. Thus, as we have previously held, "[w]hen delay is attributable to the evasive actions of a suspect, the police do not exceed the permissible duration of an investigatory stop." *Cady v. Sheahan*, 467 F.3d 1057, 1063 (7th Cir. 2006) (citing *United States v. Sharpe*, 470 U.S. 675, 687-88 (1985)). Based on the totality of the circumstances, the officers conducted a valid *Terry* stop

and did not unlawfully arrest Hardrick. Therefore, the district court did not err in granting summary judgment in favor of defendants on Hardrick's unlawful arrest claim.

Regarding his excessive force claim, Hardrick asserts that it would not imply the invalidity of his guilty plea because he is claiming that defendants exerted excessive force after he was apprehended, specifically "while he was 'peaceably waiting to be handcuffed,' and after he had been handcuffed." He specifically asserted in his complaint that "[i]n the course of making the above referred arrest, [the officers] used excessive and unreasonable force, causing plaintiff to sustain personal injuries." Hardrick further alleged in his answers to defendants' interrogatories that Limacher broke his wrists while handcuffing him, sprayed mace in his eyes, and, along with the other officers, beat him. These allegations do not present a collateral attack to Hardrick's conviction, but rather assert an argument that Hardrick "suffered unnecessary injuries because [the officer's] response to his resistance . . . was not, under the law governing excessive use of force, objectively reasonable." *Van Gilder*, 435 F.3d at 692 ("Were we to uphold the application of *Heck* in this case, it would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages."). Accordingly, Hardrick's § 1983 action is not precluded under *Heck*.[2]

---

[2] Defendants make much of the fact that Hardrick did not assert a claim of self-defense before the state trial court. In particular, defendants note that under Illinois law, when it otherwise

(continued...)

Relying upon *Okoro v. Callaghan*, 324 F.3d 488 (7th Cir. 2003), defendants argue that Hardrick's alleged excessive force is intertwined with his state court conviction which included that he "struggled while being handcuffed," and is, thus, *Heck*-barred. While straddling a fine line, Hardrick has not alleged a factual scenario in his § 1983 action that has crossed over to a situation like the one in *Okoro.* In *Okoro*, we concluded the plaintiff's § 1983 claim was barred by *Heck* because he asserted facts that were necessarily contrary to his criminal conviction. "Despite being convicted of selling drugs to an undercover officer, Okoro maintained that he had been trying to sell, not drugs, but jewels, which the police stole." *Gilbert*, 512 F.3d at 900. Unlike Okoro, Hardrick's claim in his interrogatory responses that he was "peaceably waiting to be handcuffed" does not preclude or contra-

---

[2] (...continued)

would be a violation of law to resist an arrest by a police officer, even an unlawful one, an individual has the right of self-defense when an officer is using excessive force. *See* 720 ILCS 5/7-1 and *People v. Williams*, 640 N.E.2d 981, 985-86 (Ill. App. Ct. 1994). Hardrick violated the statute of resisting a peace officer when he fled from Limacher, and he does not assert that the defendants employed excessive force at the time he fled, regardless of the fact that he also struggled while being handcuffed. In other words, even if he was entitled to assert a claim of self-defense while being handcuffed, Hardrick could not have raised a claim of self-defense for first fleeing Limacher, which also served as a basis for his conviction of resisting a peace officer. Therefore, a claim of self-defense would not have succeeded before the state court, and his failure to raise that defense does not impair his present excessive force claim.

vene the fact that he "struggled while being handcuffed," as set forth in the criminal complaint charge to which he pleaded guilty. The fact that Hardrick "struggled while being handcuffed" at one point in time does not preclude the possibility that at another point in time, Hardrick was "peaceably waiting to be handcuffed." Whether a fact-finder would find this scenario plausible is not for us to conclude, but in terms of *Heck,* it is not one that " 'necessarily' implies the invalidity of the conviction," and does not bar Hardrick's excessive force claim. *Id.*

## III.

Because Hardrick's answers to defendants' interrogatories were not inadmissible hearsay, they should have been considered by the district court in support of Hardrick's response to defendants' motion for summary judgment. The district court properly granted defendants' motion for summary judgment on Hardrick's unlawful arrest claim, but erred in granting defendants' motion on Hardrick's excessive force claim because it was not *Heck*-barred. Therefore, we AFFIRM, in part, REVERSE, in part, and REMAND, in part.