In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3574

CHRISTINA JONES,

*Plaintiff-Appellee*,

*v.*

CRAIG CLARK and DONN KAMINSKI,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 4612—**Wayne R. Andersen**, *Judge.*

ARGUED APRIL 7, 2010—DECIDED JANUARY 14, 2011

Before WOOD, EVANS, and SYKES, *Circuit Judges.*

WOOD, *Circuit Judge.* Christina Jones is an employee of Commonwealth Edison ("ComEd"), which is the major electricity provider in the Chicago area. One day, while working in her job as a meter reader in Braidwood, Illinois, she was stopped and then arrested by Officers Craig Clark and Donn Kaminski. The officers were responding to a report that a "person of color" was taking pictures of houses in Braidwood. (Jones is an

African-American, and Braidwood is almost entirely white. According to the U.S. Census Bureau, Braidwood's population in 2000 was over 97% white. See http://www.census.gov.) Jones sued the officers, alleging among things that the stop and arrest violated her Fourth Amendment rights. The defendant officers took the position that no constitutional violation had occurred because they reasonably suspected that Jones was involved in criminal activity at the time of the stop and they had probable cause to arrest her. The parties outlined their positions in cross-motions for summary judgment, and Officers Clark and Kaminski added that they were entitled to qualified immunity from suit, which allows public officials to avoid trial "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mitchell v. Forsyth*, 472 U.S. 511, 517 (1985) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The district court concluded that factual disputes required a trial on the merits and similarly made it impossible to resolve the immunity question. In this appeal, Officers Clark and Kaminski urge that the undisputed facts entitle them to immunity. We conclude that the district court correctly saw that this case is not suitable for summary disposition, and we thus affirm.

**I**

We begin, as we must, with our jurisdiction to consider this appeal. Appellate jurisdiction is limited to "final decisions of the district courts." 28 U.S.C. § 1291.

Generally, a lower court's order cannot be reviewed until all claims of all parties have been resolved. *Johnson v. Jones*, 515 U.S. 304, 309 (1995). The key is finality, however, and there are some narrow circumstances in which finality is possible even though the primary lawsuit has not yet been resolved. One such circumstance, established in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), is for "collateral orders," which are understood to be final and immediately appealable even though they issue before final judgment. An order falls within *Cohen*'s class of collateral orders when it conclusively determines a disputed question that is separate from the merits of the case and is effectively unreviewable on an appeal from the final judgment. See *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978).

*Mitchell v. Forsyth*, 472 U.S. 511, 528-30 (1985), extended this framework to an order denying a motion for summary judgment based on a public official's claim of qualified immunity. There, the Court instructed that such an order is immediately appealable to the extent that it turns on an issue of law. *Id.* at 530. In some respects, it is easy to see how a summary decision denying qualified immunity fits *Cohen*'s model. Qualified immunity is an entitlement to avoid trial (in addition to other burdens of litigation), and that represents an interest entirely independent of the underlying subject matter of the suit. Moreover, a decision denying immunity is effectively unreviewable on an appeal from the final judgment—the damage, by that time, has been done. See *Mitchell*, 472 U.S. at 526-27. On the other hand, the *Cohen* framework breaks down if

there is no separation between the merits of the underlying lawsuit and the subject matter of the collateral order being appealed. The order must be separable from the primary suit; otherwise, there would be nothing final about its resolution and jurisdiction could not be supported under § 1291. The problem, as the Court has recognized, is that a great number of orders denying qualified immunity at the pretrial stage are linked closely to the merits of the plaintiff's claim. See *Johnson*, 515 U.S. at 311-12; *Mitchell*, 472 U.S. at 527-29. The order from which Officers Clark and Kaminski now seek relief is no exception.

This conundrum led the Court in *Mitchell* to underscore that a qualified-immunity appeal must focus exclusively on legal questions about immunity, rather than factual disputes tied up with the merits of the case. 472 U.S. at 527-30. That principle is at work in the cases that follow *Mitchell*. *Johnson* holds that a defendant denied qualified immunity at summary judgment "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." 515 U.S. at 319-20. To similar effect, *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996), warns that "determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case[.]" Even if we think that the district court's reading of the summary judgment record is incorrect, a collateral-order appeal is not the time to resolve such a factual dispute. *Via v. LaGrand*, 469 F.3d 618, 623 (7th Cir. 2006). Instead, a

defendant who appeals from a denial of qualified immunity must limit himself to "abstract issues of law." *Johnson*, 515 U.S. at 317.

The official's right to immunity turns on two questions: first, whether the facts presented, taken in the light most favorable to the plaintiff, describe a violation of a constitutional right, and second, whether the federal right at issue was clearly established at the time that the alleged violation occurred. *Pearson v. Callahan*, 129 S. Ct. 808, 818-22 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The way that the first inquiry is phrased is reminiscent of the approach to dismissals under Federal Rule of Civil Procedure 12(b)(6) or rulings on summary judgment: the reviewing court takes the record in the light most favorable to the opponent of the motion and asks whether the case can proceed. This avoids the need to resolve disputed issues of fact. The second inquiry even more obviously involves pure questions of law. The trick there is to ensure that we are evaluating the situation at the correct level of specificity. See *Anderson v. Creighton,* 483 U.S. 635, 639-40 (1987). When the district court denies qualified immunity at summary judgment because the plaintiff's evidence, if believed by a trier of fact, would suffice to show a constitutional violation, and the court concludes that the governing rule is well established, any appeal must be limited to the legal underpinnings of the court's ruling.

*Behrens* clarified that a district court's assertion that factual disputes preclude a defendant's claim of immunity does not itself deprive the court of appeals of

jurisdiction. 516 U.S. at 312-13. An immediate appeal on stipulated facts may still be possible, or the defendant may concede for purposes of the appeal that the plaintiff's version of the facts is correct, or he may accept the district court's view that there are factual disputes but take each disputed fact in the light most favorable to the plaintiff. See *Viilo v. Eyre*, 547 F.3d 707, 711 (7th Cir. 2008); *Sain v. Wood*, 512 F.3d 886, 891 (7th Cir. 2008); *Sallenger v. Oakes*, 473 F.3d 731, 738 (7th Cir. 2007); *Knox v. Smith*, 342 F.3d 651, 656 (7th Cir. 2003); *Coady v. Steil*, 187 F.3d 727, 730-31 (7th Cir. 1999).

In a collateral-order appeal like this one, where the defendants say that they accept the plaintiff's version of the facts, we will take them at their word and consider their legal arguments in that light. If, however, we detect a back-door effort to contest the facts, we will reject it and dismiss the appeal for want of jurisdiction. By the same token, an appeal from a denial of qualified immunity cannot be used as an early way to test the sufficiency of the evidence to reach the trier of fact. In such a case, where there really is no legal question, we will dismiss the appeal for lack of jurisdiction. See *Viilo*, 547 F.3d at 712; *McKinney v. Duplain*, 463 F.3d 679, 690 (7th Cir. 2006); *Via*, 469 F.3d at 623-25 & n.2.

Here, as we have already noted, the district court decided that factual disputes prevented resolution of the officers' qualified immunity claim. It said, "[A] factual dispute exists as to whether defendants Officers Clark and Kaminski had probable cause to arrest plaintiff," and it added that "the disputed facts include . . . whether

Officer Clark had reasonable suspicion to stop Jones."
*Jones v. Clark*, 2009 WL 3055366, at *5 (N.D. Ill. Sept. 21,
2009). To a large extent, these conclusions represent
factual determinations that cannot be disturbed in a
collateral-order appeal. Aware of this problem, the
officers now insist that their appeal raises only legal
questions. In their briefs, they have said that they
"concede Plaintiff's version of the facts of this case" and
they "have adopted the Plaintiff's version of the facts."
At argument they repeated, "We're asking your
honors to accept everything [Jones] says. That's what
we're asking in this case." These statements, we con-
clude, are enough to take the disputed facts off the table
for jurisdictional purposes. We therefore turn to the
merits of the qualified immunity defense, presenting the
facts as Jones recounts them.

## II

August 16, 2005, promised to be a busy day for Jones.
She had 500 electrical meters to read for ComEd before
the end of her shift, and by 8 a.m. she was hard at work
in Braidwood. Like many ComEd meter readers, Jones
carried a pair of binoculars with her so that she could
take readings from a distance, in the event that a gate
was locked or a dog was left guarding a yard. A concerned
citizen saw Jones using her binoculars, confused her for
a construction worker photographing houses along the
street, and called the Braidwood Police.

Officers Clark and Kaminski, who were patrolling
separately, responded. Officer Clark drove straight to

the scene, where he found Jones walking across the street, dressed in a hat, shirt, pants, and a reflective vest, all emblazoned with ComEd's logo. From his car, Officer Clark asked Jones whether she was reading meters, and she said that she was. Within three minutes of responding to the 911 call, Officer Clark radioed Officer Kaminski and his dispatcher to explain that Jones was a ComEd worker. Thirty seconds later, Officer Kaminski radioed in. He had stopped to talk with the person who had called the police, and Officer Kaminski too confirmed that Jones was reading meters.

Surprisingly, that did not end the investigation. Officer Clark asked Jones whether she would speak with him for a moment. Jones agreed to do so. Officer Clark parked his car, approached Jones, and explained that there had been a complaint. Jones gave Officer Clark two ComEd identification cards. Each displayed the ComEd logo and Jones's photograph on the front; one gave Jones's full name and her ComEd employee number; and the other said "FIELD IDENTIFICATION" and "Christina A." Jones commented that her driver's license was in her car, which was parked a few blocks away. After Officer Clark explained that a resident was concerned that someone was taking photographs of houses, Jones realized that her binoculars must have caused the confusion and she showed them to Officer Clark, explaining why she used them.

Then Jones turned to walk away. Officer Clark stopped her, asking, "What's the rush?" Jones explained that she was in a hurry because she had a tremendous amount of

work to finish before the end of the day. Officer Clark, still unsatisfied, asked Jones for her date of birth. As the defendants ultimately conceded at oral argument, during the course of this exchange Jones was not free to leave. Jones asked why Officer Clark needed the additional information and accused him of harassing her. Then she took a few steps away from Officer Clark, took out her cell phone, and dialed her supervisor. Officer Clark radioed to Officer Kaminski that Jones was refusing to cooperate.

Moments later, Officer Kaminski arrived and saw Jones standing with her phone to her ear, three feet away from Officer Clark. Officer Kaminski was irate. He screamed at Jones as he approached and demanded to know whether she had given Officer Clark the information he needed. Jones said that she had, and Officer Kaminski responded, "No, you didn't. Do you want to go to jail?" Jones naturally said no, but it was too late. Officer Kaminski knocked Jones's cell phone from her hand, pulled her arms behind her back, put her in handcuffs, and then threw her against Officer Clark's police car. As Officer Kaminski patted Jones down, Jones said, "[T]his is harassment . . . . [T]his is happening because I am black in Braidwood."

Officers Clark and Kaminski took Jones to the police station for booking. Officer Kaminski continued to act abusively toward Jones once they arrived there. At one point, he mocked Jones's actions and things she had said, mimicking her voice and adding, "[Y]ou wanted to make it racial out there . . . . [N]ow it's racial." Jones was

charged with obstructing a peace officer. She was released on bond that day. The charge had been pending for more than two years when it was terminated with a directed verdict for Jones.

## III

As we mentioned, Officers Clark and Kaminski are entitled to immunity if their conduct did not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818. The Supreme Court has broken this down into two central questions: whether the officers violated Jones's constitutional rights and whether the rights they allegedly violated were clearly established at the time the incident occurred. We may address these questions in any order. *Pearson*, 129 S. Ct. at 818-22. This case is somewhat unusual in that there is no serious dispute about the second question. The contours of the constitutional right that the officers allegedly violated here—the right to be free from arrest without probable cause—were clearly established when the events in question took place. *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1013 (7th Cir. 2006) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). In addition, it was well known at the time that an officer's decision to perform an investigatory stop must be justified by reasonable suspicion—that is, "by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981). Accordingly, the only question before us is whether, under Jones's

version of the facts, Officers Clark and Kaminski violated these clearly established rights.


A

Officer Clark did not violate the Constitution by asking Jones what she was doing. So long as communication between an officer and a citizen remains consensual, the Fourth Amendment is not implicated. *Florida v. Bostick*, 501 U.S. 429, 433-34 (1991); *Gentry v. Sevier*, 597 F.3d 838, 846-47 (7th Cir. 2010). But the officers concede that their stop went beyond consensual questioning and that Jones was not free to go. When an encounter shifts from consensual dialogue to an investigatory stop, the officer must be able to point to specific facts that give rise to a reasonable suspicion that the person stopped is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *United States v. Vega*, 72 F.3d 507, 515 (7th Cir. 1995). The investigatory stop must be "justified at its inception, and . . . reasonably related in scope to the circumstances which justified the interference in the first place." *Hiibel v. Sixth Judicial Dist. Court of Nevada*, 542 U.S. 177, 185 (2004) (internal quotation marks omitted).

The fatal flaw in Officers Clark and Kaminski's argument is that they cannot point to a single circumstance that could have led them to believe that Jones was engaged in criminal activity. See *Brown v. Texas*, 443 U.S. 47, 51-52 (1979). When we asked counsel for the defendants at oral argument what crime Jones might have committed, he responded that the officers "thought she was casing the place." The officers were thinking, he

continued, that "crooks occasionally pose as utility workers to try and get into someone's home." While that may be true, Officer Clark encountered Jones on the street dressed top to bottom in ComEd gear; she immediately confirmed that she was reading electrical meters; and Officer Clark relayed that information to his colleagues. Officer Kaminski promptly confirmed this fact with the very resident who had placed the 911 call. Jones also forthrightly showed Officer Clark multiple pieces of identification from her employer and explained why she had binoculars. None of this would lead any reasonable person to believe that criminal activity was afoot.

Nor does any federal or state law justify the stop or support the view that Jones was committing a crime. It is not a crime to take pictures on the street, and it is not an offense for a ComEd worker to read electrical meters using binoculars. This case therefore bears no resemblance to one in which an officer responds to a call about a domestic dispute and detains a person matching the description of the perpetrator. See *Hardick v. City of Bolingbrook*, 522 F.3d 758, 763 (7th Cir. 2008). Objectively viewed, Jones's behavior provided no basis for even a reasonable suspicion that unlawful activity was taking place, and so it cannot be the basis of a *Terry* stop. *Moya v. United States*, 761 F.2d 322, 325-26 (7th Cir. 1984).

The defendants invoke the Illinois "stop and identify" statute, 725 ILCS 5/107-14, and the Supreme Court's decision in *Hiibel*, 542 U.S. 177, but neither helps them. Under the Illinois statute, an officer may request a person's name and address "when the officer reasonably

infers from the circumstances that the person is commit-
ting, is about to commit or has committed an offense . . . ."
725 ILCS 5/107-14. We have recognized that a person
refusing to comply with this law can be arrested for
obstructing a peace officer. *Cady v. Sheahan*, 467 F.3d 1057,
1063 n.8 (7th Cir. 2006). In *Hiibel*, the Supreme Court
held that it did not violate the Fourth Amendment for
an officer to stop a citizen, request identification, and
arrest the citizen for failing to comply with Nevada's
stop and identify statute after the citizen refused to
identify himself. 542 U.S. at 185-89. Integral to *Hiibel*'s
holding, however, was that there was "no question that
the initial stop was based on reasonable suspicion." *Id.* at
184. Indeed, the premise of the Illinois law, just like the
Nevada law at issue in *Hiibel*, is that the initial stop is
justified under *Terry v. Ohio*. Where an initial stop is not
based on specific, objective facts that establish rea-
sonable suspicion, *Brown* controls rather than *Hiibel*, and
the existence of a stop-and-identify statute is irrelevant.
The facts as Jones describes them demonstrate that
Officers Clark and Kaminski violated Jones's Fourth
Amendment rights when they stopped and detained
her, and so the officers are not entitled to qualified im-
munity on that claim.

B

Jones also complains that her arrest violated the
Fourth Amendment. Here, the officers are entitled to
qualified immunity only if they had probable cause to
arrest her or if a reasonable officer in their position could

mistakenly have believed that probable cause existed. *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). Our conclusion that the officers had no reason to be suspicious of Jones in the first place forecloses almost any attempt they might make to show that they had arguable probable cause to arrest Jones. Nonetheless, the officers claim that they had (or were reasonably mistaken in their belief that they had) probable cause to arrest Jones for both obstructing a peace officer, the crime Jones was ultimately charged with, and disorderly conduct. Probable cause depends on state criminal law, *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979), and it exists when a reasonable officer with all the knowledge of the officers on the scene would have believed that the suspect committed an offense defined by state law, *Wagner v. Washington County*, 493 F.3d 833, 836 (7th Cir. 2007) (*per curiam*).

Officers Clark and Kaminski's argument that they had probable cause to arrest Jones for disorderly conduct is so underdeveloped that it could be considered waived or at least forfeited. See *Spath v. Hayes Wheels Int'l-Ind. Inc.*, 211 F.3d 392, 397 (7th Cir. 2000). Forfeited or not, however, it is impossible to conclude from Jones's version of events that any police officer could have thought that Jones "knowingly . . . [did] any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace," which is the definition of disorderly conduct in Illinois. 720 ILCS 5/26-1(a). To the contrary, Jones handled herself professionally at every step. Even when she felt she was being harassed, her response was to step a short distance away from Officer

Clark to call her supervisor. The only disorderly conduct evident in this case came from Officers Clark and Kaminski.

The officers' argument that they had probable cause to arrest Jones for obstructing a peace officer deserves more attention, but it fails as well. A person is guilty of obstructing a peace officer when she "knowingly resists or obstructs the performance by one known to the person to be a peace officer . . . of any authorized act within his official capacity . . . ." 720 ILCS 5/31-1(a). As we noted, after *Hiibel* an officer may arrest a person for obstructing a peace officer if that person fails to comply with the Illinois stop and arrest statute, but only if the initial stop was justified by reasonable suspicion of criminal activity. We have already explained why Officers Clark and Kaminski had no reason to be suspicious of Jones, and so the Illinois stop and identify statute cannot be the source of arguable probable cause for Jones's arrest. Moreover, our past cases show why actions like Jones's do not supply probable cause to arrest a suspect for obstructing a peace officer. See *Williams v. Jaglowski*, 269 F.3d 778, 781-83 (7th Cir. 2001). The Supreme Court of Illinois explained in *People v. Raby*, 240 N.E.2d 595, 599 (1968), that the Illinois statute prohibiting the obstruction of a peace officer does not criminalize "mere argument with a policeman"; instead, there must be "some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties," *id.* Jones's case is indistinguishable from the situation we confronted in *Williams*:

The defendants do not point to any physical act [the plaintiff] committed that would satisfy the requirement set out in *Raby*. Moreover . . . [the plaintiff] did not engage in any physical act that in any way hindered or impeded [the police]. Her only offense was . . . to refuse to supply . . . her date of birth, which would not constitute obstruction as the Illinois Supreme Court defined that offense in *Raby*.

269 F.3d at 782. On the record as it now stands, Jones's actions did not supply arguable probable cause to arrest her for obstructing a peace officer. Accordingly, Officers Clark and Kaminski are not entitled to qualified immunity from Jones's false arrest claim.

## IV

The doctrine of qualified immunity draws a balance between the desire to compensate those who have been injured by official misconduct and the need to protect public officials who are exercising discretion in their day-to-day jobs. *Harlow*, 457 U.S. at 819. By protecting officials from the disruption that could result from fear of liability or insubstantial lawsuits, qualified immunity "acts to safeguard government, and thereby to protect the public at large, not to benefit its agents." *Wyatt v. Cole*, 504 U.S. 158, 168 (1992). The need to protect an official's ability to carry out important duties is the driving force behind the Supreme Court's recognition of qualified immunity as an entitlement to avoid trial and its corresponding decision to make denials of qualified immunity immediately appealable. See *Mitchell*, 472 U.S.

at 525-30. Officers Clark and Kaminski took advantage of this framework in their appeal. Playing by the rules, they accepted Jones's version of events. But that version of events (to which they will not be bound as the case progresses) reveals nothing but a blatant and embarrassing abuse of police power. The district court correctly concluded that Jones's suit is not blocked by qualified immunity; we therefore AFFIRM its order.