In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3515

SAMMY J. MOORE,

*Plaintiff-Appellant,*

*v.*

SYLVIA MAHONE, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 07-1173—**Harold A. Baker**, *Judge*.

SUBMITTED MAY 25, 2011—DECIDED JULY 15, 2011

Before POSNER, COFFEY, and FLAUM, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff, an inmate of an Illinois state prison, brought suit against two guards under 42 U.S.C. § 1983 claiming that they had used excessive force against him in an altercation in the prison cafeteria, in violation of his constitutional right to be free from cruel and unusual punishments. The district judge dismissed the claim, without waiting for any response by the defendants, on the authority of *Heck v.*

*Humphrey*, 512 U.S. 477 (1994). With that claim the plaintiff had joined a claim against medical personnel at a different prison (to which he had been transferred immediately after the altercation) for willful disregard of the injuries that he'd sustained from the alleged use of excessive force against him. The district judge granted summary judgment for the medical personnel. That ruling was clearly correct, so we say no more about it. The dismissal of the excessive-force claim presents a closer question.

After the altercation a prison disciplinary board (called an Administrative Review Board) had found the plaintiff guilty of "Assaulting Any Person, Dangerous Disturbances, Insolence, and Disobeying a Direct Order." The board credited the officers' statements that the plaintiff had become belligerent and argumentative and had punched one of the officers repeatedly in the face and head before being handcuffed by another officer. The plaintiff was punished by being placed in segregation and deprived of certain privileges and some good-time credits. He did not challenge the board's ruling, which was made in May 2007 and has long been final.

Under the rule of the *Heck* case, a civil rights suit cannot be maintained by a prisoner if a judgment in his favor would "necessarily imply" that his conviction had been invalid, *id*. at 487, and for this purpose the ruling in a prison disciplinary proceeding is a conviction. *Edwards v. Balisok*, 520 U.S. 641 (1997); *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008). The *Heck* rule is analogous to collateral estoppel: an issue determined with finality in

a full and fair adjudicative proceeding (and essential to the decision in that proceeding) cannot be reopened in a subsequent case. *Id*. at 901; *Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006). The reason for requiring that the issue have been essential is that if resolving the issue was irrelevant to the outcome of the case, there was neither incentive to challenge that resolution on appeal nor reason for the appellate court to consider such a challenge.

So *Heck* forbids a prisoner in his civil rights case to challenge a finding in his criminal or prison-discipline case that was essential to the decision in that case; if he insists on doing that, the civil rights case must be dismissed. *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003).

But we said in the *Gilbert* case that the prisoner can remain "agnostic" in his civil rights case about the findings in the criminal (or disciplinary) proceeding; he doesn't have to confess. "Instead of insisting that Gilbert confess in open court to striking a guard, the [district] judge should have implemented *Heck . . .* through instructions to the jury at the start of trial, as necessary during the evidence, and at the close of the evidence. It would have sufficed to tell the jurors that Gilbert struck the first blow during the fracas at the chuckhole, that any statements to the contrary by Gilbert (as his own lawyer) or a witness must be ignored, and that what the jurors needed to determine was whether the guards used more force than was reasonably necessary to protect themselves from an unruly prisoner." 512 F.3d at 902.

*Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010), extended the holding of *Gilbert* to a case in which the plaintiff's civil rights complaint, en route to alleging excessive force, denied that he had resisted arrest, though he had been convicted of that crime. We said that the court should simply disregard that allegation, but we added that although "a plaintiff is master of his claim and can, if he insists, stick to a position that forecloses relief . . . . [W]e do not understand Evans to assert that he is advancing propositions (2) and (3) [(2) was that the police used excessive force to effect custody and (3) that the police beat him severely even after reducing him to custody] if and only if the district court accepts proposition (1) [that he did not resist being taken into custody]. His appellate briefs tell us that he is willing to proceed on proposition (3) alone [that the police beat him severely even after reducing him to custody]." Proof of just proposition (3) would avoid the *Heck* bar. See also *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 764 (7th Cir. 2008); *Coble v. City of White House*, 634 F.3d 865, 867 (6th Cir. 2011); *Bush v. Strain*, 513 F.3d 492, 498 n. 13 (5th Cir. 2008).

This case is in between *Okoro* and the other cases we've cited. The plaintiff was not agnostic about whether he had engaged in misconduct, but neither did he totally and explicitly deny it. Yet in contrast to Evans, who made clear to us that he would not insist on denying that he had resisted arrest (for if he did insist, his suit would be barred by *Heck*), our plaintiff came close to doing so—close enough to create real doubt concerning his intentions. In *Hardrick v. City of*

*Bolingbrook*, *supra*, where the plaintiff had pleaded guilty to resisting a police officer by "struggl[ing] while being handcuffed," 522 F.3d at 760, we drew a distinction between the officers' use of force before and after the handcuffing: "the fact that Hardrick 'struggled while being handcuffed' at one point in time does not preclude the possibility that at another point in time [he] was 'peaceably waiting to be handcuffed.'" *Id*. at 764. So far as appears, Hardrick had not denied that he had struggled while being handcuffed, and the state had not contended that the struggle had begun earlier; apparently he had started to struggle when they started to handcuff him.

The amended complaint in the present case alleges that before any physical contact, the plaintiff and the officer who shortly afterwards allegedly struck him with a walkie-talkie had "had a short discussion in regards to [the officer's] talking to plaintiff in a disrespectful and unprofessional manner after plaintiff asked [the officer] where he was suppose[d] to sit" in the cafeteria. After the plaintiff sat down at the table to which the officer had directed him, the officer "approached plaintiff and began to make comments in an attempt to provoke plaintiff into engaging in a physical altercation with him." According to the complaint, the officer failed to provoke the plaintiff. "[A] short time later, while plaintiff was eating, he noticed a hand reach over his right shoulder, which he slapped away with his left hand. [He] then jumped up out of his seat and turned around to see who had reached over his shoulder, at which time he seen [the officer] was the only person standing behind

him. A short time thereafter plaintiff was tackled from behind, placed on the floor and told to put his hands behind his back and 'cuff up' [meaning, allow handcuffs to be placed on him, by the other officer]. Plaintiff complied with [that officer's] order and did not make any attempt to resist. [The officer] then held plaintiff down long enough to allow [the other officer] to bash him on the top of his head two times with his walkie-talkie . . . . At the time [the officer] bashed plaintiff in the head with his walkie-talkie, plaintiff was subdued with handcuffs, was not posing an immediate threat, or a threat in general, to himself, another, or [the officers] that would require such force to be used." After the bashing, the other officer told the officer who had bashed the plaintiff "that's enough."

These allegations are in tension with the disciplinary board's findings. Slapping away a hand that was placed on one's shoulder without express or implied authorization to do so would not be an assault (more precisely, in the language of tort law, a battery—an assault is a threatening gesture, not an impermissible physical contact), but instead, if as the plaintiff claims he didn't know it was an officer's hand, a lawful response to an unpermitted touching, and would not justify discipline. The plaintiff's narrative implicitly (and remember that *Heck* requires only, to bar the subsequent suit, that the complaint in it "necessarily *imply*" the invalidity of the prior judgment), and in places explicitly, denies that he created a disturbance, dangerous or otherwise, was insolent, or was disobedient, as found by the disciplinary board. According to his narrative he was tackled

from behind shortly after standing up to see who had placed a hand on his shoulder. In his statement to the disciplinary board—which the board didn't credit—he said that the officer told "me he was not going to hit me today. Before I know it I get tackled . . . . I didn't hit [him] and my head was busted." In light of that statement, the allegation that he was tackled from behind shortly after standing up is most naturally understood as a denial that he struck the officer repeatedly, or for that matter at all, in the face and head.

The narrative leading up to the allegation of bashing with a walkie-talkie cannot be dismissed as irrelevant to the claim of excessive force. The narrative depicts the plaintiff as a lamb—the victim of a gratuitous, brutal attack. Suppose instead that he was a raging bull, that the second officer had to struggle to handcuff him and in the mêlée the first officer struck him with his walkie-talkie in the reasonable belief that he was defending himself or the other officer or both; prison guards ordinarily are not armed, and a walkie-talkie might have been the nearest thing the officer had to a weapon. The complaint denies that the plaintiff was violent. The denial not only is inconsistent with the disciplinary board's finding but serves to strengthen the plaintiff's claim of excessive force.

The judge could, perhaps should, have disregarded, as mere surplusage, the portions of the complaint in which the plaintiff denies the board's findings. See, e.g., *United States ex rel. Garst v. Lockheed-Martin Corp.,* 328 F.3d 374, 378 (7th Cir. 2003). In a system of notice pleading, the

function of the complaint is to alert the defendant to the nature of the plaintiff's claim. Submissions seeking (or opposing) summary judgment, and final pretrial orders, contain the parties' final contentions. E.g., *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). But in the wake of *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), complaints must be dismissed if they fail to state a "plausible" basis for relief. The basis for relief stated in our plaintiff's complaint is, given *Heck*, implausible, for it is that the plaintiff was the victim of an utterly unprovoked assault, and while that conceivably is true, it is barred by *Heck*. The judge could have retained the case (minus the deliberate-indifference claim) on the authority of *Evans*, and just have forbidden the plaintiff to embroider his claim with the rejection of the disciplinary board's findings. But likewise he could do what he did—dismiss it.

But not with prejudice. The plaintiff was proceeding pro se. He may not have heard of *Heck v. Humphrey* when he filed his complaint. All the judge said in dismissing the claim was that "as plaintiff lost good time regarding the March 2, 2007, altercation with [the two officers], his claim that they used excessive force against the plaintiff is barred by *Heck v. Humphrey*." This was too terse, and in fact was erroneous. That the plaintiff was disciplined didn't trigger the application of *Heck*, as the judge implied; what triggered it was the fact that the plaintiff was challenging the findings of the disciplinary board. The judge should have said that, and rather than dismissing the case with prejudice should either have retained it but warned the plaintiff that he could

not challenge the findings made by the disciplinary board or have permitted him to file a second amended complaint that would delete all allegations inconsistent with those findings. *McCann v. Neilsen*, 466 F.3d 619, 622 (7th Cir. 2006). That might have been a preferable alternative to letting the existing complaint stand and ignoring the challenges in it to the disciplinary findings, since those challenges permeate the complaint and the plaintiff may be unwilling to abandon them.

The case must be returned to the district court to decide whether to dismiss the complaint without prejudice or not dismiss but warn the plaintiff that he cannot challenge the disciplinary board's findings. If the judge decides to dismiss it and the plaintiff then files a new complaint, the judge should advise him of a possible problem with venue. The plaintiff filed this case in the Central District of Illinois, which was the proper venue because his deliberate-indifference claim arose from events at a prison in that district. But the incident from which the excessive-force claim arose took place in a prison in the Southern District of Illinois. If Moore files a second amended complaint in the Central District (which is where he continues to be imprisoned), he should also file a motion to transfer the case to the Southern District, 28 U.S.C. § 1404(b), lest he be met with a defense of improper venue. Fed. R. Civ. P. 12(b)(3). If the judge decides not to require the plaintiff to file a second amended complaint, he can still transfer the excessive-force claim to the Southern District if that would be a more convenient venue. 28 U.S.C. § 1404(a).

There will be a further complication should the judge decide to dismiss the complaint: the two-year limitations period applicable to the plaintiff's claim of excessive force has expired. 735 ILCS 5/13-202; *Wilson v. Garcia*, 471 U.S. 261, 275 (1985). In light of the complexity of the *Heck* rule in application, and the plaintiff's pro se status, the district judge if he dismisses the complaint should give serious consideration to allowing a plea of equitable tolling, provided the long interval between the filing of the complaint and the dismissal of the suit was not the result of inexcusable delay by the plaintiff.

The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.