NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 11, 2019[*]
Decided February 11, 2019

**Before**

WILLIAM J. BAUER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-2036

| | |
|---|---|
| LAWRENCE HARRIS,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Western District of Wisconsin. |
| *v.* | No. 16-cv-594-jdp |
| LORIE IVERSON, et al.,<br>    *Defendants-Appellees*. | James D. Peterson,<br>*Chief Judge*. |

## O R D E R

Lawrence Harris, a Wisconsin inmate, sued employees of the Wisconsin Department of Corrections under 42 U.S.C. § 1983, for violating his First Amendment rights by retaliating against him after he filed a grievance. The district court granted summary judgment for the defendants. It correctly reasoned that Harris did not properly exhaust his charge administratively, so we affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

At the summary-judgment phase, we construe the facts in the light most favorable to the non-moving party, here Harris. *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016). Harris worked in the prison's kitchens until he was fired on April 7, 2016. His discharge led to three internal actions. First, Harris submitted a grievance asserting that food services wrongly found that his work was "unsatisfactory." Shortly after he filed his grievance, Harris says that he spoke with two managers about it. They told him that because he had filed a grievance about his discharge, they needed to file a conduct report detailing why he had been discharged.

The second internal action was the conduct report. Filed a few days later, it stated that Harris was fired for stealing food. At a disciplinary hearing later that month, hearing officers played a surveillance video that showed Harris taking food. Harris's response was that "[t]his conduct report was written out of retaliation," and he pointed to his conversation with the two managers. The hearing officer ruled that the managers had no reason to fabricate the report, found Harris guilty of theft, and sentenced him to ten days of room confinement. Harris did not appeal this decision.

About two weeks after the unappealed disciplinary decision, the prison resolved Harris's grievance contesting his discharge. A complaint examiner recommended that the grievance be dismissed because food services had fired Harris for stealing. Harris appealed and argued that the conduct report (alleging theft of food) was false and issued to retaliate against Harris filing a grievance. A new complaint examiner rejected Harris's appeal, reasoning that Harris had not justified overturning the dismissal and his argument about retaliation was not properly before the appellate examiner because Harris had not raised it in his initial grievance.

In the third internal action, Harris complained by letter to the warden about his discharge. He argued that it was unfair, the conduct report false, and the food-services unit did not use the proper procedure when it fired him. The warden replied that Harris should have been paid through the date of the disciplinary hearing, and he adjusted Harris's pay accordingly. Harris did not challenge this resolution administratively.

Maintaining that his conduct report was retaliation for his grievance, Harris sued prison officials for violating the First Amendment. In the defendants' motion for summary judgment, they argued that Harris had failed to exhaust his administrative remedies for his retaliation claim, as required by 42 U.S.C. § 1997e. The district court observed that in filing his grievance, Harris used Wisconsin's Inmate Complaint Review System. See WIS. ADMIN. CODE §§ DOC 310.04, 310.06–310.07, 310.09–310.13. But, the

court said, the rules of that process "generally do not allow grievances of conduct-report-related issues," the challenge that Harris was attempting. Instead, the court continued, Harris could have used the conduct-report appeals process to assert retaliation. Wisconsin inmates may appeal the outcome of a disciplinary hearing within ten days of receiving a report. WIS. ADMIN. CODE § DOC 303.82. But Harris did not appeal his adverse ruling, so the court concluded that he did not exhaust.

Harris raises three arguments to contest this exhaustion ruling, but each is unavailing. We review dismissals for failure to exhaust de novo. *Hernandez*, 814 F.3d at 840. "Failure to exhaust is an affirmative defense, and Defendants have the burden of proof." *Id.* (internal quotation marks omitted).

First, Harris argues that the district court erred in accepting the defendants' argument that he failed to exhaust the conduct-report process, because they first offered this argument in their reply brief. But the defendants were responding to Harris's opposition brief, where he argued that he could not have used the regular grievance system to raise his retaliation charge. Defendants may properly respond "in their reply brief to a theory of the case that [the plaintiff] asserted in response to defendants' motion for summary judgment." *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 763 (7th Cir. 2008). And here the defendants pointed out that, besides the regular grievance system, the conduct-report appeals process was also available. Moreover, the court's conclusion was "a natural and reasonable response to what [Harris] had argued" in his memorandum in opposition. *Bell v. DaimlerChrysler Corp.*, 547 F.3d 796, 806 (7th Cir. 2008). And the district court was correct: Wisconsin inmates may appeal the outcome of a disciplinary hearing, WIS. ADMIN. CODE § DOC 303.82, but Harris did not appeal his discipline to contend that the conduct report was retaliatory.

Harris's second argument is that he properly used the regular grievance system to raise his retaliation claim. To exhaust under that process, an inmate must file a complaint alleging "one clearly identified issue." WIS. ADMIN. CODE § DOC 310.07(5). Harris's allegation of retaliation appeared only at the appeal stage, *id.* § 310.09; in his initial grievance, he complained only that his termination was not warranted because his work had been satisfactory. "In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). Not only did Harris fail to assert retaliation in his grievance contesting the discharge, it would have been *impossible* for

him to do so. According to Harris, when he filed his grievance, the conduct report had not yet been filed, so he could not have alleged that it was retaliatory.

Next, Harris contends that he exhausted his administrative remedies by writing to the warden, but this argument fails for two reasons. First, the letter he wrote to the warden was not one of the methods for exhausting a claim. See WIS. ADMIN. CODE § DOC 310. Second, even if it was, Harris's letter would have needed to "alert the [warden] to the problem and invite corrective action." See *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) (internal quotation marks and alterations omitted). But Harris's letter did not mention retaliation. He said only that the discharge was unfair, the conduct report was falsified, and the food-services unit did not follow the correct procedure to fire him. The warden plainly stated in his letter that updating Harris's pay through the date of the disciplinary ruling resolved the issue, because he ended his response by saying "I hope this addresses your concerns." And besides filing this lawsuit, Harris never told the warden otherwise.

Finally, Harris contends that the district court unreasonably denied his requests for counsel. See *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). But the district court reasonably denied those requests after finding that Harris had the skills to litigate the case himself given its level of complexity. See *id.* at 654–56. Moreover, legal assistance could not change the historical fact that Harris failed to exhaust administrative remedies, so recruiting counsel would have been futile.

AFFIRMED