In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-1728

ALEX GILBERT,

*Plaintiff-Appellant,*

*v.*

TIMOTHY COOK, NIGEL PHELPS, and KEVIN WALKER,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 01-286-CJP—**Clifford J. Proud**, *Magistrate Judge.*

ARGUED DECEMBER 6, 2007—DECIDED JANUARY 9, 2008

Before EASTERBROOK, *Chief Judge*, and CUDAHY and RIPPLE, *Circuit Judges*.

EASTERBROOK, *Chief Judge*.  *Heck v. Humphrey*, 512 U.S. 477 (1994), holds that the plaintiff in an action under 42 U.S.C. §1983 may not pursue a claim for relief that implies the invalidity of a criminal conviction, unless that conviction has been set aside by appeal, collateral review, or pardon. *Edwards v. Balisok*, 520 U.S. 641 (1997), extends this doctrine to the decisions of prison disciplinary tribunals. A magistrate judge, presiding by the parties' consent in this action under 42 U.S.C. §1983, concluded that *Heck* and *Edwards* prevent the plaintiff from introducing evidence about what happens after the events that have been the subject of the prior adjudication.

Alex Gilbert was an inmate at Tamms Correctional Center in Illinois during March 1999. His account of what defendants (three guards) did is disputed. Because the magistrate judge blocked the jury from hearing Gilbert's full story, we must summarize things from his perspective, and the reader must bear in mind that the guards have a different version. Details are irrelevant for current purposes; we give an outline.

As the guards escorted a handcuffed and shackled Gilbert up the stairs toward his cell, they tripped him. After returning Gilbert to his cell, the guards closed the door and told him to place his arms through the chuckhole, an opening that can be used to cuff and uncuff prisoners' hands while their limited mobility reduces the risk of violence to the guards. A prison disciplinary board found that Gilbert was nonetheless able to punch one of the guards while they were removing his cuffs. Given *Heck* and *Edwards*, Gilbert is bound by this finding. (The board revoked a year's worth of Gilbert's good-time credits; he could have sought review under 28 U.S.C. §2254 but did not.) The guards raised the ante by wrenching Gilbert's left arm, using it as a lever and the edge of the chuckhole as the fulcrum. That violence separated Gilbert's shoulder (causing excruciating pain) and scraped off about six inches of skin (causing more pain and a prominent scar). Gilbert contends that this on-the-spot corporal punishment violates the eighth amendment.

Gilbert denies striking anyone. He would like to tell a jury his story—that the guards tripped him in the stairwell and continued the assault through the chuckhole, all without provocation. In response to the magistrate judge's insistence that he not contradict the board's decision, however, Gilbert attempted to present his claim without either contesting or accepting the board's finding. Given the board's (incontestable) finding, Gilbert had to argue that the guards wrenched his arm out of its

socket in retaliation for an act that Gilbert neither concedes nor denies. This would be a difficult task for a lawyer and was even more difficult for a poorly educated layman—as Gilbert, who has been in prison since he was 14, could not find a lawyer willing to represent him, and the magistrate judge declined to recruit counsel on his behalf. Gilbert's struggle to proceed without confessing that he had punched a guard frustrated the magistrate judge; the judge's effort to enforce the rule of *Heck* and *Edwards* frustrated and confused Gilbert.

Eventually the magistrate judge directed Gilbert not to present any evidence about what happened after he reached the top of the stairs (which is to say, after he returned to his cell). That ruling effectively gave judgment for the defendants as a matter of law (see Fed. R. Civ. P. 50), because, without evidence of what happened after he placed his arms in the chuckhole, Gilbert could not show that the guards laid a finger on him. Gilbert rested his case without being allowed to present the bulk of his evidence, and the magistrate judge then formally granted the defendants' Rule 50 motion.

If Gilbert had been willing to concede that he had punched a guard, he would have had clear sailing. Like the law of issue and claim preclusion, *Heck* prevents a litigant from contradicting a valid judgment. A contention that a guard struck back after being hit is compatible with *Heck*. Otherwise guards (and for that matter any public employee) could maul anyone who strikes them, without risk of civil liability as long as the private party is punished by criminal prosecution or prison discipline for the initial wrong. One major function of the due process clause is to ensure that a wrongdoer's punishment comes after a hearing, rather than being meted out on the spot by a public official's fists or weapons. A prison disciplinary panel lacks authority to prescribe, as the punishment for striking a guard, a separated shoulder

and a gash in a prisoner's arm; guards who are dissatisfied by the slow pace and (it may seem to them) light punishments available through the formal disciplinary apparatus have no right to take matters into their own hands by beating their charges. Just as *Wallace v. Kato*, 127 S. Ct. 1091 (2007), holds that *Heck* does not affect litigation about police conduct in the investigation of a crime, so we hold that *Heck* and *Edwards* do not affect litigation about what happens after the crime is completed. Public officials who use force reasonably necessary to subdue an aggressor are not liable on the merits; but *whether* the force was reasonable is a question that may be litigated without transgressing *Heck* or *Edwards*. See *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006).

Is a plaintiff's confession to his own offense—a confession that might facilitate a criminal prosecution on top of the prison discipline—a precondition to a civil remedy against public officials who respond with excessive force? The magistrate judge thought so, relying principally on *Okoro v. Callaghan*, 324 F.3d 488 (7th Cir. 2003). But Okoro did not maintain an agnostic position toward his conviction; he advanced a claim that could not succeed unless the conviction was invalid. Despite being convicted of selling drugs to an undercover officer, Okoro maintained that he had been trying to sell, not drugs, but jewels, which the police stole. He demanded the return of the gems or damages in their stead. That argument was incompatible with his conviction. Although Okoro might have tried to argue that he offered *both* drugs and gems, and that the officers bought the former while stealing the latter—or that he sold drugs on one occasion while offering jewels on another—he insisted that his inventory was jewelry and nothing else. A plaintiff "is master of his ground," 324 F.3d at 490, and having chosen a ground that could not be reconciled with his conviction Okoro had to lose, we concluded.

An argument along the lines of "The guards violated my rights by injuring me, whether or not I struck first" does not present the sort of inconsistency that doomed Okoro's suit. To put Gilbert's claim this way is to show that his success would not imply the invalidity of the decision revoking his good-time credits. Only a claim that "necessarily" implies the invalidity of a conviction or disciplinary board's sanction comes within the scope of *Heck*. See *Nelson v. Campbell*, 541 U.S. 637, 647 (2004) (stressing the importance of "necessarily" in stating the rule of *Heck*). See also *McCann v. Neilsen*, 466 F.3d 619 (7th Cir. 2006).

There remains the fact that Gilbert encountered difficulty adhering to an agnostic posture on the question whether he had hit a guard. Gilbert told the judge that he anticipated that one of his witnesses would testify that the chuckhole's size and location makes it impossible for a prisoner to punch anyone outside the cell. The magistrate judge saw as the last straw Gilbert's reference to "the alleged punch" when questioning a guard about his location during the incident. Yet the judge did not find that Gilbert violated his orders by phrasing his question this way; no other part of the judge's discussion implies that the eventual restriction—disallowing any evidence of events that occurred after Gilbert reached his cell—was imposed as a sanction for disobeying orders regulating the conduct of the trial.

Instead of insisting that Gilbert confess in open court to striking a guard, the judge should have implemented *Heck* and *Edwards* through instructions to the jury at the start of trial, as necessary during the evidence, and at the close of the evidence. It would have sufficed to tell the jurors that Gilbert struck the first blow during the fracas at the chuckhole, that any statements to the contrary by Gilbert (as his own lawyer) or a witness must be ignored, and that what the jurors needed to

determine was whether the guards used more force than was reasonably necessary to protect themselves from an unruly prisoner.

This case must be retried, and Gilbert must be allowed to present evidence about what the guards did to him after he extended his hands through the chuckhole. The district court's first step on remand should be to determine, using the standards of *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007) (en banc), whether to request an attorney to represent Gilbert at the upcoming trial. See 28 U.S.C. §1915(e)(1).

REVERSED AND REMANDED

A true Copy:

   Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*

USCA-02-C-0072—1-9-08