In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2805

PATRICIA CLARETT,

*Plaintiff-Appellant,*

*v.*

STEVEN ROBERTS, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 5625—**John F. Grady**, *Judge.*

ARGUED OCTOBER 28, 2010—DECIDED SEPTEMBER 23, 2011

Before MANION, ROVNER, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Police officers went to Patricia Clarett's home in Lansing, Illinois, early one morning to question her sons about a burglary that had occurred overnight in nearby Lynwood, Illinois. A confrontation ensued and escalated quickly. One of the officers Tasered Clarett three times, and the officers arrested her for obstruction and resisting arrest. Those charges were subsequently dropped, and Clarett sued the officers

under 42 U.S.C. § 1983 alleging use of excessive force and false arrest in violation of the Fourth Amendment, and various state-law claims. A jury returned a verdict for the officers on all counts. Clarett appealed.

We affirm. Clarett waived her most plausible claim of trial error—the court's decision to admit two of her criminal convictions—when she introduced evidence of the convictions herself, before the officers could do so. Her remaining evidentiary challenges are meritless. We also reject Clarett's claims of instructional error. Finally, the district court properly denied Clarett's motion for judgment as a matter of law as well as her motion for a new trial. The parties told dramatically different stories about the confrontation inside Clarett's home, and the jury was entitled to believe the officers' version of events.

## I. Background

Early in the morning on October 11, 2005, officers with the Lynwood Police Department received a report that a suspicious vehicle was making unusual, repeated trips to and from a garage. Officers dispatched to the neighborhood saw a vehicle in the area matching the caller's description. The officers stopped the vehicle and in it found Clarett, her boyfriend, and her two sons Patrick and Anthony Peters. The officers also noticed an air compressor in the vehicle; none of the occupants of the vehicle claimed to own the compressor, so the officers confiscated it. Soon thereafter, Lynwood police received a call reporting a garage burglary. Among the

items reported stolen was an air compressor whose model number matched the one recovered from Clarett and her sons. Lynwood officers went to Clarett's home in Lansing to try to talk with her sons, but they first called the Lansing Police Department for backup.

At trial Clarett and the officers disagreed about what occurred when the officers arrived at her home. Clarett testified that when the officers asked to speak with her sons, she asked them to remain at the door while she woke them. Despite her request that they wait outside, the officers—including several she claimed were hiding out of her sight—entered her home immediately. When she asked them again to wait outside, Lansing Officer Steven Roberts used his Taser to immobilize her, causing intense pain. Roberts was six feet away, and he used the setting on the Taser that caused barbs to project from the device and attach to Clarett. Clarett testified that once she regained muscle control, she tried to run from Roberts. The Taser barbs were still attached to her, however, and Roberts shocked her a second time. The second deployment caused Clarett to fall in the hallway. Clarett testified that Roberts deployed the Taser a third time, totally without provocation.

The officers' description of the confrontation was very different. They claimed that they entered Clarett's home only after she consented and that none of the officers were hiding. They testified that Clarett also gave them permission to enter her sons' bedroom. Several did so, and a dispute soon arose. Clarett ran past some of the officers who were still in the living room and blocked

their entry into the bedroom. Officer Roberts testified that he told Clarett a number of times to move away from the door, but she refused. Fearing for the safety of the officers in the small bedroom, Roberts warned Clarett that he would deploy the Taser if she did not move. When she did not move, he deployed the Taser, and she fell to the ground. The Taser delivered an electrical current for five seconds. Roberts said he waited five seconds, then tried to assist Clarett in getting back on her feet, but she began to kick at him. He warned her several times to stop, and when she did not, he deployed the Taser a second time. Because she continued to resist, Roberts decided to arrest her for obstruction. When he attempted to handcuff Clarett, however, she started to yell and flail her arms. When she would not stop, Roberts shocked Clarett a third time. The officers were then successful in placing Clarett under arrest.

Though the parties radically disagreed about important details, they agreed that Roberts deployed the Taser three times. It was also undisputed that Clarett suffered various injuries as a result of the deployments. A doctor who examined her the day after the incident noted electrical burns from the Taser barbs, as well as multiple bruises and sprains. She was prescribed Valium for stress-induced anxiety.

Clarett was charged with obstructing an officer and resisting arrest, but those charges were eventually dropped. Clarett then brought this action against four officers from Lansing and three from Lynwood alleging claims for excessive force and false arrest in violation of

the Fourth and Fourteenth Amendments. She also brought state-law claims for malicious prosecution and failure to intervene. The case was tried to a jury, which returned a verdict for the defendants on all counts. Clarett moved for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure, or in the alternative for a new trial under Rule 59. The district court denied the motions, and Clarett timely appealed.

## II. Discussion

Clarett's appeal focuses primarily on claimed evidentiary and instructional errors. She also argues that the jury's verdict was against the weight of the evidence and asks us to remand for entry of judgment in her favor as a matter of law, or alternatively, a new trial.

### A. Evidentiary Challenges

Clarett challenges three evidentiary rulings made by the district court. First, she challenges the court's pretrial decision to admit evidence of two of her criminal convictions, one for retail theft and one for obstructing a police officer. Second, she claims that the court erroneously allowed Officer Roberts, a lay witness, to offer expert testimony. Finally, she argues that the court erroneously excluded evidence that the police did not have a warrant to enter or search her home. We review the district court's evidentiary decisions for abuse of discretion and will reverse "only where no reasonable person

could take the view adopted by the trial court." *United States v. L.E. Myers Co.*, 562 F.3d 845, 855 (7th Cir. 2009).

### 1. Admission of Clarett's Convictions

The district court entered a ruling in limine that two of Clarett's criminal convictions—for misdemeanor retail theft and obstructing a police officer—could be admitted at trial.[1] The judge held that her retail-theft conviction was admissible under Rule 609(a)(2) of the Federal Rules of Evidence as a crime involving an act of dishonesty. The judge held that her obstruction conviction was also admissible, though he did not specify the grounds. It appears that the judge admitted this conviction—or perhaps both—for purposes of impeachment since Clarett had denied in her deposition that she had ever been convicted of a crime.

These rulings may have been problematic. Admission of a criminal conviction under Rule 609(a)(2) is limited to crimes for which "it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness." FED. R. EVID. 609(a)(2). The Advisory Committee Notes explain that this rule is generally limited to "perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretenses," and similar crimes. Retail theft lacks an element of an

---

[1]  The judge excluded Clarett's third conviction—for forgery—because it was too old.

act of dishonesty that is common to crimes of this type. As such, "[t]his circuit generally does not count retail theft as a crime of dishonesty" for purposes of Rule 609(a)(2). *Kunz v. DeFelice*, 538 F.3d 667, 675 (7th Cir. 2008).

The authority to admit evidence for impeachment purposes is implicit in Rule 607 of the Federal Rules of Evidence. *See* 27 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE § 6096, at 655 (2d ed. 2007). To the extent that the court gave a green light to the introduction of either of Clarett's convictions to attack her truthfulness, their admission was governed by Rule 608(b), which provides that specific instances of conduct bearing on a witness's character for truthfulness "other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence." FED. R. EVID. 608(b). Neither conviction was admissible under Rule 609.[2] So the defendants could not make affirmative use of this evidence or prove it up by way of extrinsic evidence. Moreover, it is generally

---

[2] Under Rule 609(a)(1) evidence of a conviction is admissible for impeachment purposes if the crime is "punishable by death or imprisonment in excess of one year." Clarett's retail theft and obstruction convictions were both misdemeanors; the defendants do not argue that they were admissible under Rule 609(a)(1). As we have already explained, to be admissible for impeachment purposes under Rule 609(a)(2), a conviction must involve an act of dishonesty or false statement as proof of an element of the offense; neither of Clarett's convictions qualifies.

improper to rely on extrinsic evidence to impeach a witness about a collateral matter. *Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 627 (7th Cir. 2003); *United States v. Bonner*, 302 F.3d 776, 785 (7th Cir. 2002) ("[O]ne may not contradict for the sake of contradiction; the evidence must have an independent purpose and an independent ground for admission." (quotation marks omitted)). "A matter is collateral if it could not have been introduced into evidence for any purpose other than contradiction." *United States v. Williamson*, 202 F.3d 974, 979 (7th Cir. 2000) (quotation marks omitted).

The only remaining evidentiary option available to the officers was inquiry on cross-examination. Under Rule 608(b) specific instances of conduct bearing upon truthfulness "may . . . be inquired into on cross-examination" in the discretion of the court. Perhaps this is what the court and the officers had in mind. As things unfolded at trial, however, and apparently based on the court's pretrial ruling, the first mention of the convictions came during Clarett's case-in-chief, when her counsel questioned her about them on direct examination.

By introducing the convictions herself, Clarett waived the right to challenge their admission on appeal. The Supreme Court has held that criminal defendants who introduce evidence of their own prior convictions in an effort to remove the "sting" forgo the right to appeal the trial court's decision to admit those convictions into evidence. *Ohler v. United States*, 529 U.S. 753, 758 (2000). The Court held that by introducing the evidence first, the defendant adopts a concerted trial strategy to

minimize the prejudicial effect of the evidence and in so doing waives the right to appeal the court's ruling that the evidence may be admitted at trial. *Id.*; *see also United States v. Saunders*, 359 F.3d 874, 877-78 (7th Cir. 2004).

We have never addressed whether the *Ohler* principle applies in civil cases. Clarett argues against applying *Ohler* in the civil context, noting that criminal defendants have the right not to testify in their defense, while civil plaintiffs generally must do so in order to prove their claim. This distinction is immaterial in light of *Ohler*'s reasoning. The Court noted that even after a criminal defendant chooses to take the stand, she "has a further choice to make . . . . The defendant must choose whether to introduce the conviction on direct examination and remove the sting or to take her chances with the prosecutor's possible elicitation of the conviction on cross-examination." *Ohler*, 529 U.S. at 757-58. The same choice is present in civil cases. Similarly, in the criminal context, the government must also make a tactical decision:

> If the defendant testifies, [the government] must choose whether or not to impeach her by use of her prior conviction. Here the trial judge had indicated he would allow its use, but the Government still had to consider whether its use might be deemed reversible error on appeal. This choice is often based on the Government's appraisal of the apparent effect of the defendant's testimony. If she has offered a plausible, innocent explanation of the evidence against her, it will be inclined to use the prior con-

viction; if not, it may decide not to risk possible reversal on appeal from its use.

*Id.* at 758 (footnote omitted). The Court noted in *Ohler* that when the defendant decides to introduce the conviction evidence herself, she denies the government "its usual right to decide, after she testifies, whether or not to use her prior conviction against her." *Id.*

The logic of *Ohler* applies with equal force in both criminal and civil cases. The tactical nature of each party's decisions is the same; indeed, the stakes are higher in a criminal case, and still the Supreme Court found waiver. We note that every circuit to have addressed the question has applied *Ohler* in civil cases. *See, e.g.*, *Bowoto v. Chevron Corp.*, 621 F.3d 1116, 1130 (9th Cir. 2010); *Estate of Smith v. City of Wilmington*, 317 F. App'x 237, 239 n.1 (3d Cir. 2009); *Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 904 (8th Cir. 2006); *Ludwig v. Norfolk So. Ry. Co.*, 50 F. App'x 743, 751 (6th Cir. 2002). In *Canny* the Eighth Circuit observed that a civil litigant should not be allowed to "avoid the consequence of its own trial tactic by arguing it was forced to introduce the evidence . . . to diminish the prejudice." 439 F.3d at 904. We agree. Because Clarett introduced the evidence of her retail theft and obstruction convictions herself, she is precluded from challenging their admissibility on appeal.

## 2. *Admission of Expert Testimony by Lay Witness*

Clarett next argues that the district court erred by allowing Officer Roberts, a lay witness, to offer expert

testimony. Roberts was questioned about an inconsistency between the number of times he Tasered Clarett and the digital register retained in the Taser's internal memory. The parties agreed that Roberts Tasered Clarett three times and that each shock lasted for five seconds. But the printout from the Taser's digital memory recorded six separate deployments of the Taser, some just one second apart. When Clarett's counsel asked Roberts about the discrepancy, he disclaimed technical knowledge about the mechanics of the Taser or the computer download that produced the printout. At one point during this testimony, the judge instructed Clarett's attorney not to "ask this witness a great many technical questions. He does not purport to be an expert, and it would be unfair to put words in his mouth."

Under questioning from his own counsel, however, Roberts testified that based on his experience and training, it would be physically impossible to discharge the Taser multiple times just one second apart. He also testified more generally about the Taser printout, which registered 585 separate deployments occurring over the span of more than a year. He also said that "[a]fter reviewing this printout, there does appear to be many different malfunctions in the printout." Clarett argues that this was impermissible expert testimony by a lay witness, offered without compliance with the requirements of Rule 702.

We disagree. Roberts did not give technical testimony about how the Taser's internal memory operated or how data was uploaded from the Taser to the police depart-

ment's central computer—subjects that no doubt would have required some form of properly qualified expert testimony under Rule 702. Rather, his testimony was limited to his own experience in operating the Taser. He explained the steps required to fire the Taser in order to illustrate the incongruity of rapid, successive deployments only one second apart. Neither this testimony, nor his discussion of the Taser printout, was couched in terms of an expert opinion. *See* 29 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE § 6253, at 119-20 (1997) ("[S]everal courts have held that, in cases involving opinions based on various types of extensive experience in a given industry or on a specific subject, the opinions properly could have been classified as either lay or expert.").

Even if this testimony crossed the line into the domain of expert opinion, its admission was harmless. FED. R. EVID. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ."); *Liu v. Price Waterhouse LLP*, 302 F.3d 749, 756 (7th Cir. 2002) ("[A]n error is harmless if it did not contribute to the verdict in a meaningful manner."). The parties agreed that Roberts deployed the Taser three times for five seconds each; had there been a dispute on this subject, the evidence of the Taser printout discrepancy might have been more important. As it was, in light of the parties' agreement, this discrepancy had little significance. *See Aguirre v. Turner Constr. Co.*, 582 F.3d 808, 814 (7th Cir. 2009). Indeed, the judge might have excluded the evidence of the Taser printout on grounds of

irrelevancy; once the issue was raised, however, it was not an abuse of discretion to permit Roberts to testify about it to the limited extent that he did.

### 3. *Exclusion of Evidence that the Officers Did Not Have a Warrant*

Clarett also challenges the district court's decision to exclude evidence that the officers did not have a warrant to enter and search her home. The officers moved before trial to exclude this evidence as well as any testimony about whether Clarett consented to their entry into her home. They argued that whether they had a warrant or consent was irrelevant to the elements of Clarett's § 1983 claims. The district court granted the motion in part, excluding all references to the absence of a warrant. The court held, however, that whether Clarett consented was potentially probative of what happened once the officers were inside the house.

This was not an abuse of discretion. That the officers did not have a warrant was irrelevant to whether they used excessive force or falsely arrested Clarett for obstruction after they entered the house. Stated differently, the fact that they did not have a warrant does not make it any more or less likely that they subsequently violated her federal rights by using excessive force or falsely arresting her for obstruction. Even if there was error, it was harmless. Despite the court's pretrial ruling, Clarett put the issue before the jury anyway. On at least two occasions, Clarett testified that the officers did not have a warrant to enter her home. Accordingly,

she can hardly claim to have been harmed by the district court's pretrial ruling.

**B. Jury Instructions**

Clarett raises three claims of instructional error. She contends that the jury instructions on excessive force and probable cause were erroneous, and also that the district court should not have rejected her request for a limiting instruction regarding the jury's use of her prior convictions. We review de novo whether the jury instructions fairly and accurately summarized the law. *United States v. Quintero*, 618 F.3d 746, 753 (7th Cir. 2010). We review the district court's decision whether to give a particular jury instruction for abuse of discretion, *United States v. Tavarez*, 626 F.3d 902, 904 (7th Cir. 2010), and will reverse only if the instructions in their entirety so thoroughly misled the jury that they prejudiced Clarett. *Quintero*, 618 F.3d at 753.

### 1.  *Excessive-Force Instruction*

The district court's excessive-force jury instruction was based on the Seventh Circuit pattern jury instruction and was adapted to conform to the evidence in the case. The court explained that excessive force "means more force than is reasonably necessary under the circumstances shown by the evidence," and instructed the jury that "if [Clarett] did in fact interfere with the arrest of her sons, then the defendant Roberts also had the right to use the degree of force necessary to arrest

the plaintiff for that interference and for the offense of resisting her own arrest." The court also explained that to recover against Roberts on her excessive-force claim, Clarett had the burden of proving that he used excessive force, that she suffered injury or harm, and that his use of excessive force was the proximate cause of her injury or harm.

Clarett argues that this approach to the excessive-force instruction improperly conflated her excessive-force claim with her false-arrest claim, making the former contingent on the latter. Not so. The district court simply explained that some degree of force may have been appropriate to arrest Clarett if the jury found she was actually obstructing the officers. The jury's consideration of the excessive-force claim was not improperly linked to its determination of the false-arrest claim. Put differently, the jury was free to conclude that Roberts used excessive force in subduing and arresting Clarett even if it found that the arrest itself was legal.

Clarett also argues that the excessive-force instruction improperly required her to prove that injury or harm occurred as a result of the excessive force. She cites *Briggs v. Marshall*, 93 F.3d 355 (7th Cir. 1996), for the proposition that injury need not be shown in order to prevail on a claim of excessive force.[3] But this was not a

---

[3] The pattern jury instruction leaves the harm element of the excessive-force claim to the discretion of the trial judge

(continued...)

"no injury" excessive-force case. Everyone agreed that Clarett sustained injuries during the course of her confrontation with Roberts. In this situation, a nominal-damages instruction—perhaps appropriate in a true no-injury case—would have been inappropriate here.

### 2. Probable Cause

On the false-arrest claim, the court gave the jury the following instruction on the meaning of probable cause: "Probable cause exists if the facts and circumstances known to the officer are sufficient to warrant a reasonable person in believing that the suspect had committed or was committing an offense." Clarett proposed that the court substitute "a reasonable police officer" for "a reasonable person" and now claims it was error for the judge to decline to do so. For support she cites *Llaguno v. Mingey*, 763 F.2d 1560 (7th Cir. 1985) (en banc), but that case is silent on this particular claim of instructional error. The issue in *Llaguno* was whether the probable-cause instruction elucidated or confused the issues before the jury based on the specific facts of that case. *Id.* at 1569.

---

[3] (...continued)

because the law on this point is not settled. *See* 7TH CIR. PATTERN CIVIL JURY INSTRUCTION 7.08. *Briggs* says only that there is no per se rule preventing a party from seeking nominal damages in an excessive-force claim without a provable injury. *Briggs v. Marshall*, 93 F.3d 355, 359-60 (7th Cir. 1996); *see also Frizzell v. Szabo*, 647 F.3d 698, 701-02 (7th Cir. 2011).

Here, the district court's probable-cause instruction was adapted from the pattern instruction, which defines "probable cause" in terms of what a "prudent person" would have believed at the time an arrest was made. 7TH CIR. PATTERN CIVIL JURY INSTRUCTION 7.06. Although some authority uses the more specific "objectively reasonable police officer" standard, *see Ornelas v. United States*, 517 U.S. 690, 696 (1996), probable cause is most often assessed by reference to the "prudent person" standard, *see, e.g.*, *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam); *see also Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007) ("Police officers possess probable cause to arrest when the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant *a prudent person* in believing that the suspect had committed an offense." (emphasis added) (quotation marks omitted)). Clarett does not explain how her proposed alternative instruction would have made any difference here. The court's probable-cause instruction was not improper.

### 3. Limiting Instruction

Finally, Clarett challenges the district court's failure to provide a limiting instruction regarding the jury's use of the evidence of her criminal convictions. She preserved this issue in the district court by submitting proposed limiting instructions; the record does not reflect why the court rejected her proposal. But on appeal Clarett's entire argument on this issue is limited

to two sentences in her opening brief: "Plaintiff offered a curative instruction (153-1 p. 39) 'you may not consider this evidence for any other purpose' which was rejected. (Tr. 873) These errors prejudiced Plaintiff and were not harmless error." She neither cited legal authority nor made any meaningful argument in support of this claim of error.

We have repeatedly held that undeveloped arguments are considered waived. *See Gross v. Town of Cicero*, 619 F.3d 697, 704-05 (7th Cir. 2010); *United States v. Tockes*, 530 F.3d 628, 633 (7th Cir. 2008) ("Unsupported and undeveloped arguments . . . are considered waived."); *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002) ("[I]t is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver." (quotation marks omitted)). We see no reason not to find waiver here.

## C. Rule 50 and Rule 59 Motions

Finally, Clarett contends that the undisputed evidence that Roberts deployed the Taser three times constitutes "overwhelming evidence" of excessive force and required the district court to enter judgment in her favor as a matter of law under Rule 50 or at least grant a new trial under Rule 59. We review the district court's denial of Clarett's motion for judgment as a matter of law de novo, reviewing the record as a whole to "determine whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is suffi-

cient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." *Erickson v. Wis. Dep't of Corr.*, 469 F.3d 600, 601 (7th Cir. 2006) (quotation marks omitted). We will overturn the jury's verdict only if no reasonable juror could have found in the defendants' favor. *Id.*; *see also Davis v. Wis. Dep't of Corr.*, 445 F.3d 974, 975 (7th Cir. 2006).

On the other hand, we review the denial of Clarett's motion for a new trial for abuse of discretion. *Id.* at 979. "A new trial may be granted if the verdict is against the clear weight of the evidence or the trial was unfair to the moving party." *David v. Caterpillar, Inc.*, 324 F.3d 851, 863 (7th Cir. 2003). On review, however, "[a] new trial should be granted 'only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience.'" *Davis*, 445 F.3d at 979 (quoting *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991)).

The jury's verdict finds ample support in the record. Clarett's telling of events differed sharply from that of the officers, and it was entirely the jury's province to choose which version to believe. Roberts testified at length regarding his reasons for deploying the Taser. He testified that Clarett was blocking the doorway to her sons' bedroom after some officers had already entered. He heard a commotion in the bedroom and believed that the officers may need help. He told Clarett to move away from the doorway and she refused. He used the Taser to temporarily immobilize and remove

her from the doorway. He said he considered using other alternatives, such as physically moving Clarett out of the way, but because the apartment was small and crowded, a physical confrontation might escalate quickly, risking serious injury. Under the circumstances, he concluded that using the Taser was his best option. Explaining the second and third Taser deployments, he said that Clarett was kicking and flailing at him and continued this assaultive behavior when he tried to arrest her. The other officers testified similarly.

The jurors were entitled to believe the officers' version of events, and we will not disturb their credibility determination. On this record a reasonable juror could easily find for the defendants; the verdict does not "cry out to be overturned" or "shock the conscience." Clarett's Rule 50 and Rule 59 motions were properly denied.

AFFIRMED.