In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1182

EDUARDO NAVEJAR,

*Plaintiff-Appellant,*

*v.*

AKINOLA IYIOLA, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 4108—**Virginia M. Kendall**, *Judge*.

SUBMITTED APRIL 19, 2013[*]—DECIDED MAY 29, 2013

Before EASTERBROOK, *Chief Judge*, and WILLIAMS
and HAMILTON, *Circuit Judges.*

PER CURIAM. Eduardo Navejar, an Illinois state
prisoner, brawled with a prison guard. He swears that

[*] After examining the briefs and record, we have concluded
that oral argument is unnecessary. Thus, the appeal is sub-
mitted on the briefs and the record. *See* FED. R. APP.
P. 34(a)(2)(C).

after guards subdued and handcuffed him, they kicked, stomped, and pepper-sprayed him twice, and then they denied him adequate medical care. The district court denied his motions to recruit counsel and later entered summary judgment for the guards on his claims that they violated the Eighth Amendment. On appeal Navejar argues that the court erred by refusing to recruit counsel for him. Because the court applied the wrong legal standard to Navejar's motion, and the lack of counsel prejudiced him, we reverse.

We assume that the following factual allegations of the complaint are true and draw all possible inferences in favor of Navejar. *Biblia Abierta v. Banks*, 129 F.3d 899, 902 (7th Cir. 1997). Navejar was imprisoned in Stateville Correctional Center in 2008. One evening while proceeding to the cafeteria, Navejar spoke to other inmates in their cells. Akinola Iyiola, a lieutenant at the prison, ordered him to get out of the cafeteria line because prison rules forbid inmates, while being transported, from stopping to speak to other inmates. Navejar disobeyed the order, became belligerent, and punched Iyiola. Other guards soon converged on the scene to assist Iyiola, and they wrestled Navejar to the ground where he was soon handcuffed.

Navejar described in an affidavit and at his deposition the force that guards used after they handcuffed and subdued him. He testified that Iyiola kicked him in the forehead near his eye, and an unidentified guard stomped his head against the ground. Next another guard, Sergeant Michael Grant, pepper-sprayed Navejar.

Guards then dragged Navejar along the floor and carried him down some stairs where Iyiola sprayed more pepper spray in Navejar's face. Guards then left Navejar alone for a half-hour in a segregation cell, while he screamed in pain, before he was allowed to wash off the pepper spray.

The next morning a guard brought Navejar to Stateville's health care unit, where nurses examined him. But before a doctor could provide medical attention, Lieutenant Glen Elberson escorted Navejar out of the health care facility, explaining that he was being transferred to Pontiac Correctional Center. That afternoon at Pontiac, Navejar was examined by a physician, who concluded, after administering X-rays, that he had suffered only bruises and scratches.

Prison officials investigated the clash between Navejar and Iyiola and charged Navejar with four disciplinary violations: assaulting prison staff, creating a dangerous disturbance, insolence, and disobeying an order, all of which he denied. After a hearing, the disciplinary board found Navejar guilty. It concluded that Navejar started the physical altercation when he "suddenly swung" at Iyiola and that Iyiola was "hit on the nose and upper lip" during the ensuing fight. Among other punishments, the board revoked one year of good time credits. Navejar appealed the ruling and submitted a grievance accusing the guards of using excessive force. He lost both the appeal and the grievance.

Navejar then sued Iyiola, Grant, Elberson, and other unnamed prison guards in federal court, alleging that

the guards used excessive force and were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. *See* 42 U.S.C. § 1983. (He also brought a claim, no longer pursued, that the discipline violated his right to due process.) During discovery, the defendants produced a few documents "as a courtesy" to Navejar. But they refused Navejar's other requests, including his request for more documents about or recordings of the altercation, citing security risks and burden.

Navejar moved four times for the recruitment of *pro bono* counsel. He filed two of his motions at the start of the case, another after the guards moved to dismiss his due-process claim, and a fourth after they moved for summary judgment. His motions asserted why he believed he was incapable of representing himself: he did not finish high school, he suffered from (an unspecified) mental illness, he had difficulty with English, he had repeatedly been moved from prison to prison and thus had trouble securing help for his case, and he had been denied access to the law library during prison lockdowns. Navejar's first two motions did not assert that he had sought counsel on his own; the district court never ruled on these motions. The third and fourth motions, though, explained that Navejar had contacted attorneys to represent him. The court denied these two motions.

But the court denied the latter two motions without citing *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007) (en banc), and instead relied on older cases in brief minute orders.

It began by applying the legal standard in *Gil v. Reed*, 381 F.3d 649, 656 (7th Cir. 2004), in evaluating (1) whether the plaintiff appears competent "to try" the case himself, and (2) whether recruiting counsel "would provide a substantial benefit to the court or the parties, potentially affecting the outcome." The court concluded that counsel was unnecessary in Navejar's case because he "alleged no physical or mental disability" precluding him from investigating the facts of his case and "[n]either the legal issues raised in the complaint nor the evidence that might support Plaintiff's claims are so complex or intricate that a trained attorney is necessary."

The district court granted summary judgment for the prison guards. The court struck Navejar's statement of material facts and deemed admitted the defendants' statement, reasoning that Navejar had committed two critical errors: (1) impermissibly attempting to create a fact dispute by citing "self-serving evidence"—his affidavit where he asserted that guards beat and pepper-sprayed him after he was cuffed and subdued; and (2) adding his own factual assertions in response to the defendants' statement of facts, rather than presenting them in a separate statement, as required by N.D. ILL. L. R. 56.1(b)(3)(C). With the defendant's version of events uncontradicted, the court concluded that no reasonable jury could determine that the guards used excessive force against Navejar. Alternatively, the court reasoned, Navejar's excessive-force claim was barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), because the prison disciplinary board found Navejar guilty of assaulting Iyiola. Finally, the court concluded that

Navejar could not recover for deliberate indifference against Elberson because no evidence suggested that Navejar suffered from a serious medical condition or that Elberson had a culpable mental state. (The district court's treatment of deliberate indifference was clearly correct, so we say nothing further about it.)

Navejar makes only one argument on appeal: that the district court abused its discretion by failing to recruit him a lawyer. In a civil case, the court has discretion to recruit counsel to represent a litigant who is unable to afford one. 28 U.S.C. § 1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). In *Pruitt* we refined the standards for evaluating whether to recruit counsel. If a plaintiff makes a reasonable attempt to secure counsel, the court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Pruitt*, 503 F.3d at 655. This inquiry does not focus solely on the plaintiff's ability to *try* his case—it also includes other "tasks that normally attend litigation" such as "evidence gathering" and "preparing and responding to motions." *Id.* When ruling on a motion to recruit counsel, the court should take account of all evidence in the record relevant to the plaintiff's capacity to litigate. *Id.* We will overturn the district court's decision only when the court has abused its discretion based on the evidence in the record when it ruled on the motion. *Id.* at 658-59. And even if the district court abuses its discretion, we will reverse only if the plaintiff shows prejudice—"a reasonable likelihood that the presence

of counsel would have made a difference in the outcome of the litigation." *Id.* at 659 (emphasis removed).

   In its orders denying Navejar's § 1915(e)(1) motions, the court erred in three ways. First, by relying on *Gil* instead of *Pruitt,* the court believed that it should decide whether Navejar was competent to *try* his case. *See Gil,* 381 F.3d at 656. But *Pruitt* clarified that the proper inquiry focuses on "whether the plaintiff appears competent to *litigate* his own claims," 503 F.3d at 655 (emphasis in original), with tactics like discovery and motion practice "that normally attend litigation." *Id.* Second, by stating without elaboration that Navejar's claims are not "so complex or intricate that a trained attorney is necessary," the district court resurrected boilerplate language that we disapproved of in *Pruitt* because it ignores the plaintiff's abilities. *Id.* at 649, 660. Although the court briefly referred to Navejar's competence, stating that Navejar "alleged no physical or mental disability," the record contradicts its statement. Navejar stressed his limited education, mental illness, language difficulties, and lack of access to fellow prisoners or other resources for assistance after his transfer from Stateville. *See also* ILL. ADMIN. CODE tit. 20, § 701.180(a) (restricting mail correspondence between inmates in different prisons). Third, the court asked whether recruiting counsel would substantially benefit "the court or the parties, potentially affecting the outcome." But in *Pruitt,* we distinguished the district court's inquiry from the standard of appellate review. *See* 503 F.3d at 654. *Pruitt* nowhere suggests that a district court should consider whether recruiting

counsel would affect the outcome of a case; instead, that inquiry is reserved for the appellate court's review for prejudice. *See id.* at 659. By applying the wrong legal standard and failing to consider the record, the district court abused its discretion. *See Bracey v. Grondin*, No. 12-1644, 2013 WL 1007709, at *2 (7th Cir. Mar. 15, 2013); *Santiago v. Walls*, 599 F.3d 749, 765 (7th Cir. 2010); *Pruitt*, 503 F.3d at 660.

The district court, unfortunately, is not alone in relying on pre-*Pruitt* case law. Many other district judges in the Northern District of Illinois have recently and regularly issued substantially similar rulings. We have found more than 100 rulings from the Northern District of Illinois since *Pruitt* using the phrase "so complex or intricate that a trained attorney is necessary." *See, e.g., Velasquez v. Kane Cnty. Jail Adult Judicial Center*, No. 13 C 0644, 2013 WL 523827, at *3 (N.D. Ill. Feb. 11, 2013); *Allen v. Wexford Health Sources*, No. 12 C 50380, 2012 WL 6587792, at *4 (N.D. Ill. Dec. 17, 2012); *Birks v. Dart*, No. 12 C 7701, 2012 WL 5363439, at *3 (N.D. Ill. Oct. 30, 2012). Some of these orders (like the one in this case) do not cite *Pruitt* or subsequent case law. *See, e.g., Hutcherson v. Cook Cnty.*, No. 10 C 6215, 2010 WL 3951897, at *2 (N.D. Ill. Oct. 6, 2010); *Banks v. Mills*, No. 10 C 1486, 2010 WL 3307356, at *1 (N.D. Ill. Aug. 19, 2010); *Logan v. Godinez*, No. 10 C 4418, 2010 WL 2836957, at *3 (N.D. Ill. July 19, 2010). And these are only the rulings searchable through public databases; doubtless district judges have also used this obsolete language in orders not captured in these databases. We therefore take this opportunity to remind district courts about the individualized analysis that

*Pruitt* requires, *see* 503 F.3d at 655-56, and caution against using boilerplate language that we criticized *en banc*.

Even though the district court applied the wrong standard, we will not reverse without a showing of prejudice—a "reasonable likelihood that the presence of counsel would have made a difference in the outcome of the litigation." *Id.* at 659 (emphasis removed). Prejudice (unlike abuse of discretion) may be established by an after-the-fact review "of a litigant's poor performance before or during trial." *Id.* at 659-60.

In this case, the absence of counsel likely prejudiced Navejar because the district court's ruling on summary judgment reveals two substantive errors. First, the court adopted the erroneous legal argument raised by the defendants in moving for summary judgment that Navejar could not rely on "self-serving evidence" to create a material factual dispute. This is wrong. "[W]e long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the nonmovant cannot prevent summary judgment because it is 'self-serving.'" *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010); *see also Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009); *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504-06 (7th Cir. 2004); *Payne v. Pauley*, 337 F.3d 767, 770-73 (7th Cir. 2003). Here, Navejar attempted to present his side of the story at summary judgment through his affidavits and specific references to his deposition testimony. He contended that after he was subdued and handcuffed, Iyiola

kicked him in the face, a prison guard stomped his head, guards dragged him across the floor, Grant and Iyiola pepper-sprayed him, and then left him alone for 30 minutes screaming in pain. With Navejar lacking counsel to reply to the defendants' erroneous contention that the district court may safely disregard his "self-serving" evidence, the district court accepted that contention and thereby prejudiced Navejar.

Second, the defendants argued that Navejar's excessive-force claim was *Heck*-barred because the prison board found Navejar guilty of disobeying orders and assaulting Iyiola. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). The district court again agreed with the guards, ruling that *Heck* bars the excessive-force claim. We disagree, observing as we have before that pro se prisoners are often tripped up by *Heck*'s complexities. *See Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010); *Gilbert v. Cook, 512 F.3d 899, 901 (7th Cir. 2008)*. Navejar cannot deny that he disobeyed orders or assaulted Iyiola because those denials would "necessarily imply" the invalidity of his discipline. *See Moore v. Mahone*, 652 F.3d 722, 724-25 (7th Cir. 2011); *Evans*, 603 F.3d at 364; *Gilbert*, 512 F.3d at 900. But Navejar's assault on Iyiola is not necessarily inconsistent with his sworn contention that the guards answered his assault with excessive force *after* they subdued him. *See Gilbert*, 512 F.3d at 901-02 (reversing *Heck*-based judgment as a matter of law against inmate, remanding for trial on inmate's excessive-force claim despite prison board finding that inmate punched guard, and ordering district court to

consider recruiting counsel); *Skrtich v. Thornton*, 280 F.3d 1295, 1301-02, 1304-05 (11th Cir. 2002). "Otherwise guards (and for that matter any public employee) could maul anyone who strikes them, without risk of civil liability as long as the private party is punished by criminal prosecution or prison discipline for the initial wrong." *Gilbert*, 512 F.3d at 901. Without a lawyer for Navejar to advocate the limits of *Heck*, the court mistakenly barred Navejar from arguing that, after he assaulted Iyiola, the guards responded with disproportionate force. *See Gilbert*, 512 F.3d at 901-02.

Beyond these two errors, Navejar was also prejudiced by proceeding without a lawyer after he was transferred from Stateville. Like the plaintiff who was transferred to a new prison in *Santiago*, once Navejar was transferred, he faced "significant problems" in litigating pro se because, once at another institution, he was not readily able to "identify key witnesses, depose the defendants and gather pertinent evidence," or proceed against John Doe defendants because he couldn't ascertain their identities. *Santiago*, 599 F.3d at 763, 766; *see also Pruitt*, 503 F.3d at 660. Navejar emphasizes that he was restricted from corresponding with individuals at Stateville, including those who might have been witnesses to the brawl. *See* ILL. ADMIN. CODE tit. 20, § 701.180(a). Aware of these limits, the named defendants avoided producing virtually everything he requested in discovery. Counsel would likely not have faced the same obstacles. *See Santiago*, 599 F.3d at 765.

We conclude that there is a reasonable likelihood that Navejar would have overcome summary judgment with the assistance of counsel. Accordingly, we REVERSE the grant of summary judgment on the excessive-force claim and REMAND for further proceedings consistent with this order, including the recruitment of counsel for Navejar. *See Pruitt*, 503 F.3d at 661. In all other respects the judgment is AFFIRMED.