In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1784

DALLAS GREEN,

*Plaintiff-Appellant,*

*v.*

CORY JUNIOUS, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 CV 9447 — **Charles R. Norgle**, *Judge.*

ARGUED SEPTEMBER 27, 2018 — DECIDED AUGUST 28, 2019

Before FLAUM, MANION, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* In November 2010 Dallas Green was walking through a Citgo parking lot late at night when an unmarked Chicago police vehicle turned into the lot. He began to run as the vehicle approached, arousing the suspicion of the four officers inside. One officer chased him on foot and saw him drop and pick up a handgun. Green fled into a residential neighborhood, where another officer picked up the chase and caught up with him in the backyard

of a home. In the officer's version of the story, Green began to raise a gun in his direction, and the officer fired five shots in response, wounding Green in the hand and chest. Green denied that he had a gun at any time on the night in question.

At the time of these events, Green was on probation for a felony drug conviction. A Cook County circuit judge revoked his probation, finding that Green possessed a gun during this encounter. Green thereafter sued the officers and the City of Chicago for damages under 42 U.S.C. § 1983 alleging a multitude of federal constitutional and state-law violations. The claims against the officers proceeded to trial, but only one—a Fourth Amendment excessive-force claim against the officer who shot him—was ultimately submitted to the jury. The jurors returned a verdict for the officer. Green moved for a new trial, arguing primarily that the district judge improperly instructed the jury that the state court's gun-possession finding was conclusive on that factual point. The judge denied the motion.

We affirm. The contested jury instruction was sound. Green's excessive-force claim was premised on his contention that he was unarmed during this encounter. But the state judge found that he had a gun, and that finding has preclusive effect here. Green raises other claims of error but none has merit.

## I. Background

The whole sequence of events at issue occurred in the span of a few minutes on the night of November 15, 2010. Green was walking through the parking lot of a Citgo gas station in Chicago when an unmarked police vehicle pulled

into the lot. Four officers of the Chicago Police Department's tactical unit were inside: Cory Junious, Enyinnaya Nwagwu, Steven Archer, and Ryan Winfrey. As the police vehicle approached, Green started to run in the opposite direction. Officer Nwagwu jumped out and pursued him on foot, yelling "police stop, police stop." While fleeing through the parking lot, Green dropped something and turned to pick it up. Officer Nwagwu thought it was a gun and yelled "don't pick up that gun, don't pick up that gun." When Green ignored the instruction and picked it up, Officer Nwagwu fired a shot, narrowly missing Green. Officer Archer also testified that he saw Green drop and pick up a gun.

The pursuit continued down a residential street. As Green cut through a yard on East 87th Place, Officer Junious picked up the chase and followed him. They soon came face to face in a backyard. Their versions of the next few seconds vary considerably. Officer Junious testified that Green raised a gun toward him and then flung it to the side—"all in one sequence." As he saw Green raise the gun, the officer fired five shots in rapid succession, hitting Green in the hand and chest. Green denied that he had a gun at any time on the night in question. He testified that when he heard the officer approaching the backyard, he dropped face down on the ground and yelled not to shoot because he was unarmed. Green was handcuffed and taken to the hospital. Police recovered a black handgun two backyards away, or about 50 feet from the shooting location.

At the time of this incident, Green was on probation for a 2009 felony drug conviction. The Cook County Circuit Court initiated revocation proceedings. The judge held a hearing and found that Green possessed a gun at the Citgo station

during the confrontation with police, violating the terms of
his probation.

Green filed suit in state court against the officers and the
City of Chicago seeking damages under § 1983 for multiple
federal constitutional violations and additional violations of
state law. The defendants removed the case to federal court.
The district court dismissed most of the claims early in the
litigation, including the *Monell* claim against the City of
Chicago. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*,
436 U.S. 658 (1978). That claim, the judge said, consisted of
"mere conclusory, boiler-plate allegations." Green's second
amended complaint accused the officers of using excessive
force in violation of the Fourth Amendment and failing to
intervene to prevent the violation. Those claims were tried to
a jury.

During trial and over Green's objection, the judge gave
the following instruction pursuant to *Gilbert v. Cook*, 512 F.3d
899 (7th Cir. 2008), instructing the jury about the preclusive
effect of the state court's gun-possession finding:

> Mr. Green was found guilty of violating his
> probation on December 16, 2014, when on
> November 15, 2010, he had a handgun when
> he was in the Citgo gas station. Under the law
> Mr. Green is bound by the terms of this find-
> ing. Therefore, you should not consider any
> statement to the contrary by Mr. Green, his
> lawyers[,] or a witness, and those statements
> must be ignored. What you need to determine
> is whether the officers' use of force was rea-
> sonable under the circumstances.

The judge delivered this instruction at the following points in Green's testimony:

- When Green testified: "[A]fter my phone fell off my person, I bent down and picked it up, and I proceeded to run in the same direction I was going in. As I was running, that's when the shot was fired at me."

- When he testified about the encounter with Officer Junious: "I heard him coming through, so then I began to say, I'm unarmed, I'm unarmed, I'm over here, I'm back here, I'm unarmed. And then I saw him [coming], and I turned my body like this, and I'm showing my hands telling, I'm unarmed, I don't have anything, don't shoot, and he came and shot me."

- When Green testified that he did not have a gun at any time that night and had never held a gun.

When Green rested his case-in-chief, Officers Winfrey, Archer, and Nwagwu moved for judgment as a matter of law on the excessive-force claim, and all four officers moved for judgment on the failure-to-intervene claim. The judge granted both motions, leaving only the excessive-force claim against Officer Junious for the jury, which returned a verdict in favor of the officer.

Green moved for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure, reiterating his objection to the *Gilbert* instruction but also raising other claims of error. He moved to extend the deadline to file a supplemental memorandum with citations to the trial record. The judge declined to extend the time because Green "delayed for 17 days before ordering transcripts of [a] brief trial of a four

year old case." The judge then denied the Rule 59(a) motion, setting up this appeal.

## II. Discussion

Green reprises some of the arguments raised in his posttrial motion—namely, the challenge to the *Gilbert* instruction and certain claims of evidentiary error. We review an order denying a motion for a new trial for abuse of discretion. *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011). "A new trial may be granted if the verdict is against the clear weight of the evidence or the trial was unfair to the moving party." *David v. Caterpillar, Inc.*, 324 F.3d 851, 863 (7th Cir. 2003).

To the extent that the appeal challenges the judge's jury instructions, our standard of review is twofold: we review jury instructions de novo to determine whether they "fairly and accurately summarize[] the law," *Clarett*, 657 F.3d at 672, and we review the judge's decision to give an instruction for abuse of discretion, reversing "only if the instructions as a whole are insufficient to inform the jury correctly of the applicable law and the jury is thereby misled," *United States v. Madoch*, 149 F.3d 596, 599 (7th Cir. 1998). Claims of evidentiary error are reviewed for abuse of discretion. *Viramontes v. City of Chicago*, 840 F.3d 423, 430 (7th Cir. 2016). We will reverse only if "no reasonable person would agree with the trial court's ruling and the error likely affected the outcome of the trial." *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013).

## A.  The *Gilbert* Preclusion Instruction

Green contests the judge's jury instruction on the preclusive effect of the state court's gun-possession finding. The

parties refer to this as the *Gilbert* instruction, so we begin with the background of that case. *Gilbert* involved an Eighth Amendment claim by a prisoner who alleged that three guards used excessive force against him. 512 F.3d at 900. The prisoner, Alex Gilbert, alleged that the guards tripped him as they were escorting him—handcuffed and shackled—back to his cell. The guards left the handcuffs on until Gilbert was in his cell with the door closed. They then told him to put his hands through the chuckhole so they could remove the cuffs. He complied. As soon as the handcuffs were removed, however, Gilbert punched one of the guards through the chuckhole—or so the prison disciplinary board found when revoking a year's worth of good-time credit. *Id.* Gilbert denied punching anyone. In his version of events, the guards, unprovoked, wrenched his arm through the chuckhole, separating his shoulder. *Id.*

Gilbert wanted to testify that the guards tripped him and continued the gratuitous violence by yanking his arm through the chuckhole. *Id.* at 901. A magistrate judge barred him from testifying in contradiction of the prison disciplinary finding. *Id.* That ruling flowed from *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997). *Heck* holds that a plaintiff in a § 1983 suit cannot pursue a claim for relief that implies the invalidity of an extant criminal conviction; *Edwards* extends that doctrine to rulings by prison disciplinary tribunals. Because Gilbert wouldn't concede that he punched the guard, he had to rest his case without presenting any evidence about the subsequent assault—the core of his case. The judge granted the guards' motion for a directed verdict. *Gilbert*, 512 F.3d at 901.

We reversed and remanded for a new trial. We began by analogizing the *Heck* principle to preclusion doctrine: "Like the law of issue and claim preclusion, *Heck* prevents a litigant from contradicting a valid judgment." *Id.* We then observed that "[a] contention that a guard struck back after being hit is compatible with *Heck*." *Id.* While Gilbert could not contradict the disciplinary board's finding that he punched the guard, we explained that *Heck* and *Edwards* did not block litigation about what happened after the punch. *Id*. We held that Gilbert "must be allowed to present evidence about what the guards did to him after he extended his hands through the chuckhole." *Id.* at 902.

We explained how the judge should have applied *Heck* and *Edwards* in this situation:

> Instead of insisting that Gilbert confess in open court to striking a guard, the judge should have implemented *Heck* and *Edwards* through instructions to the jury at the start of trial, as necessary during the evidence, and at the close of the evidence. It would have sufficed to tell the jurors that Gilbert struck the first blow during the fracas at the chuckhole, that any statements to the contrary by Gilbert (as his own lawyer) or a witness must be ignored, and that what the jurors needed to determine was whether the guards used more force than was reasonably necessary to protect themselves from an unruly prisoner.

*Id.*

The instruction recommended in *Gilbert* is perhaps best understood as an issue-preclusion instruction. Our decision in *Sanchez v. City of Chicago*, 880 F.3d 349 (7th Cir. 2018), helpfully illustrates how preclusion doctrine applies in a case like this one. Sanchez was arrested, charged, and convicted in state court of aggravated driving under the influence. *Id.* at 353–55. While appealing that conviction, he filed a § 1983 action in federal court alleging claims for false arrest and excessive force. *Id.* at 354. At trial the judge instructed the jury on the preclusive effect of the conviction, explaining that Sanchez's conviction established that he was "driving under the influence of alcohol or drugs at the time of his arrest." *Id.* Sanchez lost the civil lawsuit and argued on appeal that the judge should not have given the preclusion instruction. *Id.* at 356.

We disagreed. We explained that although *Heck* did not categorically block the suit, the state criminal judgment had preclusive effect under traditional collateral-estoppel analysis. *Id.* at 357. Sanchez therefore could not dispute the finding that he was under the influence on the night of the arrest, and the instruction was proper.

*Sanchez* and *Gilbert* control here. The state judge found in the probation-revocation proceeding that Green possessed a gun when he encountered the police in the Citgo parking lot. Like Sanchez, Green wants to relitigate that factual finding. But he is bound by the adverse determination.

Green contends that because the state court's finding concerned his gun possession in the Citgo parking lot, it was error to give the *Gilbert* instruction after he testified that he was unarmed in the backyard where Officer Junious shot him. That distinction might matter if Green's theory was that

he had a gun at the Citgo station but got rid of it during the chase before Officer Junious caught up with him in the backyard. But that was not his theory of the case. He testified that he *never* had a gun at *any* time that night. That flatly contradicts the probation-revocation finding.

The other problem with this argument is that Green sued all four officers for excessive force and failure to intervene. Green claimed, for example, that he dropped a cell phone—not a gun—in the Citgo parking lot, and that Officer Nwagwu "suddenly and without warning" pointed and fired his weapon at Green "without cause or justification." The probation-revocation finding precluded him from relitigating the gun-possession issue whenever it arose during trial.

Green also quarrels with the specific wording of the preclusion instruction, arguing that it created more confusion than clarity. But he did not object to the wording of the instruction in the district court, so the argument is waived. FED. R. CIV. P. 51(c); *see also Schobert v. Ill. Dep't of Transp.*, 304 F.3d 725, 729 (7th Cir. 2002) (holding that the "objection must be specific enough that the nature of the error is brought into focus" and that "pragmatically speaking the district court must be made aware of the error prior to instructing the jury"). Regardless, trial judges have "substantial discretion [on] the precise wording of the instructions so long as the final result, read as a whole, completely and correctly states the law." *Karahodzic v. JBS Carriers, Inc.*, 881 F.3d 1009, 1016 (7th Cir. 2018). Here the judge took *Gilbert*'s recommended instruction and reasonably adapted it to fit this case.

Finally, Green protests that the judge delivered the preclusion instruction too often. Our ruling in *Gilbert* was necessarily quite general on the question of the timing of the instruction. We said only that an appropriate preclusion instruction should be read "as necessary during the evidence." 512 F.3d at 900. Here the judge read the instruction three times: (1) when Green testified that he dropped a cell phone (not a gun) while running from Officer Nwagwu in the Citgo parking lot; (2) when he testified that he was unarmed as he encountered Officer Junious in the backyard; and (3) when he testified that he did not have a gun at any time that night. We cannot fault the judge for reading the instruction at these points during Green's testimony. Indeed, it was reasonable for him to do so.

## B. Evidentiary Rulings

Green also challenges several evidentiary rulings. First, he argues that the judge should not have barred the testimony of Illinois State Police lab technician Moira McEldowney. In her written report, McEldowney wrote that she did not find usable fingerprints on the handgun that was recovered near the shooting location. Green wanted to put her testimony before the jury to bolster his claim that he did not possess the gun. The judge excluded it, ruling that her testimony would contradict the state court's finding and undermine the *Gilbert* instruction. He was right. We find no abuse of discretion.

Green next complains that the judge interrupted Officer Junious's closing argument to remind the jury to disregard part of Arthur Jones's testimony. Jones, an "associate" of Green's who was at the Citgo station during these events, testified that he saw Green drop a cell phone. The judge

admonished the jurors to "keep in mind" that he had instructed them to disregard this testimony. Green's challenge to the judge's action is woefully undeveloped and thus is waived. *See United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

Green finally contends that evidence of his 2009 felony conviction should have been excluded under Rule 403 of the Federal Rules of Evidence. But Green himself introduced the evidence. He testified on direct examination that he got in "trouble for drug possession" and pleaded guilty to a felony drug charge. "[A] defendant who preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of evidence was error." *Ohler v. United States*, 529 U.S. 753, 760 (2000); *see also Clarett*, 657 F.3d at 670–71 (holding that *Ohler* applies in civil cases).

## C.  Motion to Extend Time

Green's last argument is a challenge to the denial of his motion for an extension of time to file a supplemental memorandum in support of his Rule 59(a) motion. The judge declined to extend the time because Green delayed ordering the transcripts. Green offers no explanation for the delay, so we have no reason to question the judge's decision.

AFFIRMED